NEMOURS CORPORATION v.
UNITED STATES.
Civ. A. No. 1057.

United States District Court
D. Delaware.

April 12, 1950.

3. Act of June 5, 1920, c. 250, § 33, 41 Stat. 1007, 46 U.S.C.A. § 688.

860

This action is for recovery of undistributed profits tax paid by plaintiff for the calendar year 1936. It is here on cross-motions for summary judgment. A stipulation[1] was filed from which the following facts have, in substance, been found.

1. Plaintiff, Nemours Corporation, is a Delaware corporation organized in 1924. It is a personal holding company as defined by the applicable Federal Revenue Acts, holding investments in securities, real estate and oil and gas properties. During the taxable year involved, its total outstanding stock consisted of 36,172 no par value shares, of which 28,923 shares were held by Paulina duPont Dean and 7,249 by her husband, J. Simpson Dean. During 1936 the directors were Paulina duPont Dean, J. Simpson Dean and S. Hallock duPont. The charter of the corporation was amended in December, 1925, increasing the authorized common stock from 10,000 shares of no par value to 20,000 shares of no par value. A further amendment in December, 1927, increased the common stock from 20,000 shares of no par value to 50,000 shares of no par value.

2. On May 7, 1943, plaintiff filed, with the Collector of Internal Revenue for the District of Delaware, a claim for refund of undistributed profits tax paid for the calendar year 1936. Plaintiff was advised by letter dated August 18, 1945, that said claim for refund was disallowed in full. This suit was brought within two years from that date.

3. On March 15, 1937, plaintiff filed with the Collector of Internal Revenue for the District of Delaware, its income tax return for the calendar year 1936, prepared on a cash basis. The following tax liability of $41,904.48 shown by the return was paid to the Collector:

| | |
|---|---|
| March 17, 1937 | $10,476.12 |
| June 15, 1937 | 10,476.12 |
| September 15, 1937 | 10,476.12 |
| December 15, 1937 | 10,476.12 |

Thereafter, as a result of audit, the Commissioner of Internal Revenue determined plaintiff's federal income tax liability for the calendar year 1936 was the following:

| | |
|---|---|
| Normal tax | $ 3,064.12 |
| Undistributed profits tax | 39,044.24 |
| Total | $42,108.36 |

This finding of tax liability was based upon the determination by the Commissioner that the plaintiff's net income, as shown by the return filed in the amount of $361,988.82, should be increased to $362,650.01, a difference of $661.19. This was because of certain adjustments not here material. After deducting from the $362,650.01 figure, the normal income tax thereon of $3,064.12, as well as the credit for dividends paid during the year, namely $128,410.60, it was held that plaintiff's undistributed net income was $231,175.29 and that the undistributed profits tax due thereon was $39,044.24.

4. The difference between plaintiff's total tax liability for the year of $42,108.36, as determined by the Commissioner, and the $41,904.48 paid as later noted, or $203.88, was duly paid by the plaintiff. In the year 1936, plaintiff sold for a total of $434,753.77 certain securities which had cost it $672,267.40. A loss of $237,513.63 was thereby sustained.

5. Although this loss reduced plaintiff's earnings and profits, in the determination of plaintiff's net income subject to normal tax as well as its undistributed net income subject to undistributed profits tax,

1. All exhibits attached to the stipulation are in evidence and have been considered as a part of the record

plaintiff was permitted, by the effective Revenue Act, to claim as a deduction only $2,000.00 of this loss of $237,513.63. Plaintiff's earnings and profits for the taxable year 1936, without considering the matters contained in the next paragraph, which plaintiff contends should decrease such earnings and profits, were $133,263.45.

6. Plaintiff also claims that as of the end of 1936, there should be a further deduction from the earnings and profits of that year of $15,077.63, which it describes as "real estate repairs, insurance and depreciation". Plaintiff did not claim and was not allowed this deduction in computing its taxable income for 1936. Title to the real estate involved was transferred to plaintiff by plaintiff's principal stockholder (Paulina duPont Dean) in 1931 as the result of a request by the Chase National Bank of New York, for the purpose of improving the credit position of plaintiff, which was at that time indebted to the bank in the sum of $600,000. The real estate was a residential property occupied without payment of any rental at all times from at least 1931 to the present by J. Simpson Dean and his wife, Paulina duPont Dean, who, as stated, were the sole stockholders of plaintiff. The property was never used by the corporation for business purposes and it was never intended that it should be. Legal title to the property was later transferred back to Mrs. Dean on September 30, 1947.

The $15,077.63, which was not deducted by plaintiff in computing its income subject to either the normal tax or the undistributed profits tax for the taxable year 1936, is made up of the following:

| Actual expenditures | |
|---|---|
| Insurance | $ 4,594.20 |
| Redecorating interior first floor, halls, stairs and entrance | 3,784.50 |
| Miscellaneous repairs and materials | 462.05 |
| Painting exterior of buildings and bridges | 1,530.30 |
| Subtotal | $10,371.05 |
| Estimated allowance for depreciation | 4,706.58 |
| Total | $15,077.63 |

The taxpayer was not required to make any of the foregoing expenditures but did so at the request of its two stockholders.

7. Plaintiff's paid in capital at the time of its organization in 1924 was $962,924.19. Plaintiff's operations during the years 1925, 1926, 1927 and 1928 were profitable. During such years it declared and paid stock dividends, and recorded such transactions on its books of account by transfers from its surplus account to its capital account of the following amounts:

| Year 1925 | $150,000 |
|---|---|
| Year 1926 | 402,500 |
| Year 1927 | 679,600 |
| Year 1928 | 996,000 |
| | $2,228,100 |

8. Plaintiff sustained substantial losses in the years 1933 and 1934. On December 31, 1935, its accumulated earnings and profits amounted to $501,467.93 if the stock dividends referred to in the preceding paragraph are held not to have reduced its earnings and profits; but if such stock dividends are effective to reduce earnings and profits, it had no accumulated earnings and profits but instead a deficit in the sum of $1,726,632.07.

9. The balance sheet which appears on plaintiff's income tax return as of December 31, 1935, was obtained from the plaintiff's books and is based solely on cost and not market value and is not adjusted by any corrections made by the Commissioner. Plaintiff's net profits for its taxable year 1935 were $138,880.65. Against this income the Commissioner assessed personal holding company surtax under § 351 of the Revenue Act of 1934, 26 U.S.C.A. Int. Rev. Acts, page 757, in the sum of $19,207.60, which plaintiff paid. No other federal income taxes were due. The amounts declared and paid by plaintiff as dividends during this year totaled $83,195.60.

10. In determining plaintiff's net profits for 1936, plaintiff contends that the $133,263.45 referred to in paragraph 5, supra, should be decreased by the following deductions: (a) The matters referred to in paragraph 6, supra, entitled "real estate repairs, insurance and depreciation;" and (b) The federal tax liability of the plaintiff for

1935, referred to in paragraph 9, supra, which was actually paid subsequent to 1935.

Thomas Cooch (of Morford, Bennethum, Marvel & Cooch), of Wilmington, Del., and Laurence Graves, of New York City, for plaintiff.

Theron Lamar Caudle, Asst. Atty. Gen., Andrew D. Sharpe and Philip R. Miller, Sp. Assts. to Atty. Gen., and Francis A. Reardon, Asst. U. S. Atty., of Wilmington, Del., for defendant.

LEAHY, Chief Judge.

If it is determined the taxpayer is entitled to any credit against the undistributed profits surtax paid, the parties agree they will compute the effect of such credit upon the plaintiff's undistributed profits surtax in order to arrive at the precise amount of any judgment which may be rendered.[2]

The facts raise three questions: (1) Was the claim for refund filed under § 26 (f) of the Revenue Act of 1936, as added by Revenue Acts 1942, § 501(a) (3), 26 U. S.C.A.Int.Rev.Acts, page 344, sufficient to entitle taxpayer to a refund under § 26(c) (3), as amended by Revenue Act 1942, § 501, 26 U.S.C.A.Int.Rev.Acts page 344, if it is otherwise entitled to it under § 26(c) (3)? (2) Is the taxpayer in any event entitled to a credit under § 26(c) (3) of the Revenue Act of 1936? (3) If the taxpayer is entitled to relief under § 26(c) (3), whether it may receive the benefit of certain payments not claimed as deductions when the 1936 income tax return was filed. These questions will be considered in order, but first a statement will be made more fully discussing the arguments and apposite statutes relating to the second issue.

As the stipulation on the facts shows, plaintiff, for the years 1925–28 made money, and during such years declared and paid stock dividends. It recorded such transactions on its books by transferring from its surplus account to its capital account a sum in excess of $2,000,000. Plaintiff sustained substantial losses in the years 1933–34. On the critical date, December 31, 1935, the accumulated earnings and profits amounted to $501,467.93 if the stock dividends did not reduce its earnings and profits. But if such stock dividends are effective to reduce its earnings and profits, it had no accumulated earnings and profits but instead a deficit in the sum of $1,726,-632.07, and with the exception of minor deductions, plaintiff would be entitled to the refund here sought.

The purpose of the 1942 amendment, c. 619, 56 Stat. 798, § 501, 26 U.S.C.A.Int.Rev. Acts, page 344, was to relieve corporations which in 1936 were "caught in a trap". In short, many companies found their financial condition to be such that they were prohibited under the law of the state of their incorporation from paying dividends and yet required under the terms of the Revenue Act of 1936, 49 Stat. 1648, §§ 14, 26, 27, 26 U.S.C.A.Int.Rev.Acts, pages 823, 835, 837, to pay dividends or be taxable for their nonpayment. Plaintiff argues that under § 14 of the Delaware Corporation Law, Revised Code of Delaware 1915, § 1928, c. 65, § 14; Laws of Delaware 1925, Vol. 35, c. 85, § 8, its earnings for the years 1925–28 were duly transferred to its capital account and became a part of plaintiff's capital and were not available for distribution as earnings and profits in 1936, and that under § 34 of the Delaware Corporation Law, Revised Code of Delaware 1935, § 2066, c. 65, § 34; Laws of Delaware 1929, Vol. 36, c. 135, § 16, plaintiff could pay dividends in 1936 on its stock only out of (a) its net assets in excess of its capital, or (b) if there be no excess, out of its net profits for the year 1936 plus any net profits for the year 1935 that were not distributed by plaintiff in 1935. Since the facts show that plaintiff's capital exceeded its assets in 1936, plaintiff could pay dividends in 1936 only out of its net profits for that year plus any remaining undistributed profits for the year 1935.

I think it is unnecessary to quote the sections of the Delaware Corporation Law already referred to because not only has plaintiff correctly interpreted them but de-

---

2. The complaint claims $30,385.87 with interest. This is, however, a token claim, as the stipulation on the amount to be received by plaintiff is controlled by the stipulation.

fendant does not dispute the interpretation. Defendant, while not disputing plaintiff's interpretation of those sections of the Delaware Corporation Law, argues, however, that it could have reversed its practice of the years 1925–28 and in 1936 reduced its capital under § 28 of the Delaware Corporation Law, Revised Code of Delaware 1935, § 2060, c. 65, § 28;· Laws of Delaware 1929, Vol. 36, c. 135, § 15; and since it had this right—a right which does not require approval of the state—and did not exercise it, it was not "caught in a trap" and is not entitled to the relief provisions of § 501 of the Revenue Act of 1942.

■ I think the form of the claim for refund is sufficient to entitle plaintiff to relief. It is true that in terms the credit or refund was claimed under an erroneous section, i. e., that the claim for refund is based on § 26(f) of the Revenue Act of 1936, as added by § 501(a) (3) of the Revenue Act of 1942,[3] whereas it should have been filed under § 26(c) (3) of the same Act.[4] It is further true that under regulations of the Treasury Department, which it is authorized to make, the claim for refund must fairly apprise a Commissioner of the grounds and circumstances surrounding the claim for refund. I am not unmindful that the Court in Angelus Milling Co. v. Commissioner, 325 U.S. 293, 299, 65 S.Ct. 1162, 1165, 89 L.Ed. 1619, in connection with this problem, said: " * * * but it is not

enough that somewhere under the Commissioner's roof is the information which might enable him to pass on a claim for refund." I think, however, it is possible to agree with the Court's statement and still think the form of the claim for refund in the case at bar is sufficient. Here, the claim is made for relief under the provisions of § 501 of the Revenue Act of 1942; all the facts are available in the refund claim. That one section of the Act was mentioned rather than another seems unimportant if the basic issue is predicated on the conclusion that the refund should be allowed. The additional burden—if such there was—imposed on the Commissioner seems, at most, a very trivial one.

■ Plaintiff, under authority of Ogilvie Hardware Co. v. United States, 330 U.S. 709, 67 S.Ct. 997, 91 L.Ed. 1192, and United States v. Byron Sash and Door Co., 6 Cir., 150 F.2d 44, is entitled to relief unless precluded by its failure to exercise its rights to reduce capital under § 28 of the Delaware Corporation Law. In the last case above, which involved a Kentucky corporation, the factual situation was comparable to that here. In that case, as here, there would have been no deficit in earnings and profits on December 31, 1935, if plaintiff had not distributed stock dividends in prior years. In that case, as here, there were subsequent operating losses. Nevertheless, the Court held that the corporation was entitled to tax relief. Under the Ken-

---

3. This section provides as follows: "(f) *Deficit Credit.* The amount by which the adjusted net income exceeds the sum of (1) the earnings and profits accumulated after February 28, 1913, as of the beginning of the taxable year, and (2) the earnings and profits of the taxable year (computed as of the close of the taxable year without diminution by reason of any distributions made during the taxable year). For the purposes of this subsection, earnings and profits of the taxable year shall be computed without diminution by the amount of the tax imposed under section 14, 102, 103, or 351 for such taxable year; and earnings and profits accumulated after February 28, 1913, as of the beginning of the taxable year, shall be diminished on account of the tax under section 14, 102,

103, or 351 for any previous taxable year only by the amount of such tax as computed under the amendments made by section 501 of the Revenue Act of 1942."

4. This section provides as follows:
" '(c) *Restrictions on payment of dividends—'*
   *     *     *     *     *     *
"(3) *Deficit corporations.* In the case of a corporation having a deficit in accumulated earnings and profits as of the close of the preceding taxable year, the amount of such deficit, if the corporation is prohibited by a provision of a law or of an order of a public regulatory body from paying dividends during the existence of a deficit in accumulated earnings and profits, and if such provision was in effect prior to May 1, 1936. * * *"

tucky law, however, unlike the Delaware law, there was nothing the corporation could have done to have avoided the tax in 1936. There was no provision comparable to § 28 of the Delaware Corporation Law. The issue here, then, is a narrow one, viz., does the existence of § 28 of the Delaware Corporation Law preclude the plaintiff from his refund? I conclude not.

The arguments that plaintiff can not claim the refund unless it reduced its capital under § 28 of the Delaware Corporation Law do not persuade me. I find nothing in the Revenue Act of 1942 enforcing the conclusion that the Court must consider not only the actual situation but also the situation as it might have been. I think the Revenue Act of 1942 dealt only with an actual situation and did not make it obligatory on corporations to change their capital structures in order to qualify under the Act. Alteration of capital structure is an act of independent legal significance. There may be many reasons ex tax considerations why a company would not wish to change its capital structure. Since the remedial Act dealt with the actual condition and since the capital of plaintiff company was not, in fact, reduced, it is entitled to a refund. United States v. Byron Sash and Door Co., 6 Cir., 150 F.2d 44.

■ There were items of minor deductions. These are certain items of depreciation and expense of the property of plaintiff not claimed as deductions when the return was filed in 1936. The argument of the defendant is that since they were not claimed as deductions at the time the return was filed, they are not deductible now. The plaintiff simply takes the opposite position. I think clearly these items may be considered in connection with the relief provisions of the Revenue Act of 1942. It would be pure fiction to say that such deductions were earnings and available as dividends. Whether the deductions were claimed is irrelevant. The plain fact is that the money has been spent and obviously is not available for any purpose.

In accordance with the last paragraph of the stipulation, I am simply making a finding in favor of plaintiff, and the amounts may be arrived at when the order is settled.