## NEMOURS CORP. v. UNITED STATES.

### No. 10343.

United States Court of Appeals
Third Circuit.

Argued March 20, 1951.

Decided April 19, 1951.

Melva Graney, Washington, D. C. (Theron Lamar Caudle, Asst. Atty. Gen., Ellis N. Slack, Lee A. Jackson, Harvey M. Spear, Special Assts. to Atty. Gen., William Marvel, U. S. Atty., Francis A. Reardon, Asst. U. S. Atty., Wilmington, Del., on the brief), for appellant.

Laurence Graves, New York City, for appellee.

Before GOODRICH, McLAUGHLIN and STALEY, Circuit Judges.

GOODRICH, Circuit Judge.

This case involves the application of the 1942 tax statute upon an application for refund brought by the taxpayer to get back undistributed profits surtaxes paid by it for the taxable year 1936. The taxpayer's claim for refund was refused by the Commissioner and it successfully sued for the amount claimed in the District Court of Delaware.[1] The Government appeals. The factual questions are all settled by a stipulation between the parties.

The taxpayer has been, since its incorporation in 1924, a personal holding company. During the years 1925–1928, inclusive, it made money and distributed nontaxable stock dividends of something more than $2,000,000. These distributions were reflected on taxpayer's books by an entry which transferred that amount from the company's surplus to its capital account. During 1933 and 1934 this taxpayer, like many others, sustained substantial losses. If stock dividends are deemed to have reduced the taxpayer's accumulated earnings and profits, it had none as of December 31, 1935, but had, instead, a deficit of more than $1,700,000. If the stock dividends are not to be taken to have reduced its accumulated earnings and profits it had about $500,000 in earnings and profits as of the date mentioned. The manner in which the amount represented by these stock dividends is to be treated will largely determine the result of the case.

■ The undistributed profits tax was imposed by Section 14 of the Revenue Act of 1936, 26 U.S.C.A.Int.Rev.Acts, page 823. That it raised some hard problems for courts is a matter of common knowledge to members of the federal judiciary since that time. That it created some hard situations for taxpayers was evidently the view of Congress. In 1938 the statute was repealed. In the Revenue Act of 1942 Congress made provision for refunds in certain cases and, in addition, made the refund provision retroactive and gave other relief with regard to the bar of the statute of limitations.

The taxpayer sought to avail itself of the legislative help thus given. On May 7, 1943, it filed its claim for refund under that portion of Section 501 of the 1942

---

1. Nemours Corp. v. United States, D.C.Del.1950, 91 F.Supp. 859.

Act which added Section 26(f) to the Revenue Act of 1936.[2] The claim states that it is filed under Section 501 of the Revenue Act of 1942 and in an attached statement claims a "'deficit credit,' Section 26(f) as added by Section 501 Revenue Act of 1942."

After the taxpayer's claim for refund had been filed and after the Commissioner had rejected it, and also after the statutory period available to taxpayer for filing refund claims had passed, the Supreme Court decided the case of United States v. Ogilvie Hardware Co., Inc., 1947, 330 U.S. 709, 67 S.Ct. 997, 91 L.Ed. 1192. That decision gave aid and encouragement to taxpayers under Section 26(c)(3) of the same statute.[3] It encouraged, among others, this taxpayer who raised, for the first time in the District Court, the applicability of Section 26(c)(3) to its financial situation in 1936. For the first time the provisions of this Section, which it will be noted are quite different from that of Section 26(f), were included by the taxpayer in its demand for refund, over government objection. The District Court thought that the taxpayer had not presented a claim for refund good under Section 26(f), but concluded in view of the Ogilvie decision that it had a good claim under Section 26(c)(3) and gave judgment accordingly. The court said that it seemed unimportant that one Section of the Act was mentioned rather than another and that "The additional burden—if such there was—imposed on the Commissioner seems, at most, a very trivial one." [91 F.Supp. 863.]

We, therefore, have two questions. The first is whether the taxpayer has set out a claim on which it is entitled to refund under Section 26(f) of the statute. The second question is whether if there is to be no recovery under Section 26(f) there can be recovery under Section 26(c)(3).

The court below gave little discussion to the first question because, as above indicated, it thought there could be recovery under Section 26(c)(3). We think the taxpayer is not entitled to prevail under Section 26(f) upon which the original claim for refund was made.

The question is whether in computing "earnings and profits accumulated after February 28, 1913" under Section 26(f) the amounts transferred to capital upon issuance of the non-taxable stock dividends are to be included. The phrase "earnings and profits" has come to have an established meaning under federal tax law, and according to that meaning amounts of profits transferred to capital upon issuance of non-taxable stock dividends remain part of earnings and profits for tax purposes.[4] We see no reason to believe that Congress intended to give the phrase any other meaning in Section 26(f).

United States v. Ogilvie Hardware Co., 1947, 330 U.S. 709, 67 S.Ct. 997, 999, 91 L.Ed. 1192, is not an authority to the contrary. There the Court held that "accumulated earnings and profits" in Section 26(c)(3) of the Revenue Act of 1936, also added by Section 501(a) of the Revenue Act of 1942, was used in the state law

2. "[26] (f) *Deficit credit.* The amount by which the adjusted net income exceeds the sum of (1) the earnings and profits accumulated after February 28, 1913, as of the beginning of the taxable year, and (2) the earnings and profits of the taxable year (computed as of the close of the taxable year without diminution by reason of any distributions made during the taxable year). * * *" Rev.Act of 1936, 49 Stat. 1648, as amended in Rev. Act of 1942, § 501(a) (3), 56 Stat. 798, 26 U.S.C.A.Int.Rev.Acts, page 344.

3. "[26(c)] (3) *Deficit corporations.* In the case of a corporation having a deficit in accumulated earnings and profits as of the close of the preceding taxable year,

the amount of such deficit, if the corporation is prohibited by a provision of a law or of an order of a public regulatory body from paying dividends during the existence of a deficit in accumulated earnings and profits, and if such provision was in effect prior to May 1, 1936." Rev. Act of 1936, 49 Stat. 1648, as amended in Rev.Act of 1942, § 501(a) (2), 56 Stat. 798, 26 U.S.C.A. Int.Rev.Acts, page 344.

4. See Int.Rev.Code § 115(a) and (h), 26 U.S.C.A. § 115(a, h); Com'r v. Wheeler, 1945, 324 U.S. 542, 546, 65 S.Ct. 799, 89 L.Ed. 1166; United States v. Ogilvie Hardware Co., 1947, 330 U.S. 709, 714, 722, 67 S.Ct. 997, 91 L.Ed. 1192.

sense and not in the usual federal tax sense. The Court there dealt with a limited hardship situation. Many corporations, because of an accumulated deficit in surplus, were prevented by state law from declaring dividends, yet were required to pay an undistributed profits tax under the 1936 Act. Section 26(c)(3) was passed to give relief in this situation. The Court reasoned that since reference was to be had under Section 26(c)(3) to state law to determine whether the corporation could legally declare dividends, reference must also be made to that law rather than to federal tax law to determine when the corporation had a "deficit in accumulated earnings."

■ The Ogilvie case does not by any means govern the interpretation of Section 26(f). It is true that Sections 26(c)(3) and 26(f) of the Revenue Act of 1936 were both special relief provisions added by Section 501 of the Revenue Act of 1942, and both provided retroactive relief from inequities which resulted from the undistributed profits tax of 1936. But there the similarity ends. Section 26(c)(3) was intended to permit the refunding of taxes imposed upon a corporation for not distributing profits which the corporation was prohibited by law from distributing. Section 26(f) was intended to permit refunding of undistributed profits taxes paid when the corporation could not have avoided the tax even if it had distributed the profits.[5]

■■ The principal evil to be remedied by Section 26(f) was that resulting from the inconsistent treatment of capital losses in computing the corporate net income and in determining allowable credits against that income for undistributed profits tax purposes. This produced a result, taxwise, which Congress undoubtedly never intended. But the thing which produced it was federal tax law entirely. And in remedying the situation by 26(f) Congress used language with long-standing federal tax meaning. A refund or credit under 26(f) does not depend in any way upon state law. We conclude that the phrase "earnings and profits" in 26(f) is used in its ordinary tax sense. Taxpayer therefore is entitled to no refund on the basis of that Section.

This brings us to the second question. May taxpayer, having lost out under Section 26(f), nevertheless recover under Section 26(c)(3)? It may well be that all of the facts about this corporation relevant to a refund under the statute are contained in the disclosure made by the taxpayer's claim for refund. It is easy and natural, therefore, to argue that if the Commissioner is in possession of all the facts it is no hardship on him to skip from section to section of the same statute to see if the facts set out a valid claim for the taxpayer under any section, however differing in theory the sections may be. It is not too much, one might argue, to ask the Commissioner to know the various sections of the Revenue law, the administration of which is his daily business.

Furthermore, this argument has many analogies to support it. We think it likely that nowhere does the plaintiff now lose a lawsuit if he chooses the wrong writ and brings his action in trespass instead of case. Certainly the Federal Rules of Civil Procedure, 28 U.S.C.A., allow the widest latitude in letting a plaintiff present his facts and not be hampered by the imposition of forms of action or theory of pleading. We have recently held that where the facts in two actions were the same, the termination of one operated as res judicata, although in the other the plaintiff alleged a different theory as a ground for recovery. Williamson v. Columbia Gas and Electric Corp., 3 Cir., 1950, 186 F.2d 464. So, here, the conclusion that one has put in a claim if he has put in his facts is not only a plausible one, but one having strong elements of equity in it.

■ We think it a fair statement, however, that courts are not invited to import equitable considerations into tax cases. See the fate of Electric Storage Battery Co. v. Rothensies, 3 Cir., 1945, 152 F.2d 521, when it became Rothensies v. Electric

5. Sen.Rep.No.1631, 77th Cong. 2d Sess. 244 (1942).

Storage Battery Co., 1946, 329 U.S. 296, 67 S.Ct. 271, 91 L.Ed. 296. See, also, United States v. Lewis, 1951, 340 U.S. 590, 71 S.Ct. 522.

■ A long-standing statutory provision with regard to tax refunds is that suits may be brought only after a claim for refund has been filed with the Commissioner in accordance with the law and Treasury Regulations.[6] The Regulations governing refunds under the statute in question here provide that "The claim must set forth in detail * * * each ground upon which a refund is claimed, and facts sufficient to apprise the Commissioner of the exact basis thereof." Treas.Regs. 94, Art. 322–3 (1936).[7] It is to be noted that both the grounds for recovery and the facts supporting them must be shown. The taxpayer stated as its ground for refund Section 26(f) and made its computation accordingly. That does not, under the decisions, give him a right to claim under some other section. See especially Real Estate-Land Title & Trust Co. v. United States, 1940, 309 U.S. 13, 60 S.Ct. 371, 84 L.Ed. 542; A. M. Campau Realty Co. v. United States, Ct. Cl.1947, 69 F.Supp. 133.

■ This is hard law, no doubt. Perhaps it is necessarily strict law in view of the scope of the operations of a fiscal system as large as that of the United States. Whether that is so we are not called upon to say. We apply the rule; we do not make it. It is to be observed that recovery of claims against the Government has always been the subject of a strict compliance requirement. The recovery of claims for tax refunds is but an application of this broad and strict rule.[8]

6. Rev.Stat. § 3226, as amended in § 1103 (a) of the Revenue Act of 1932, 47 Stat. 286. See Internal Revenue Code, § 3772, 26 U.S.C.A. § 3772.

7. The present Regulations are to the same effect. Treas.Regs. 111, Sec. 29.322–3.

8. See e. g. Angelus Milling Co. v. Com'r, 2 Cir., 1944, 144 F.2d 469, 472, affirmed,

We do not consider, because not required to, whether the taxpayer's claim under Section 26(c)(3) could be upheld under the Ogilvie case cited above. It comes close to it, but recovery here would require an extension of that case. Whether that extension should be made is a question we do not reach.

■ There was a point before the District Court about a deduction for expenses in maintenance and repair of a house standing in the name of the taxpayer and occupied by its president. It is obviously true that if this was an expense of the corporation it reduced its net income and, therefore, cut down any tax the corporation would have had to pay for a given taxable year whether ordinary income tax, excess profits tax or undistributed profits tax. But if the corporation did not claim its deduction either when it filed its return or within the period allowed for the amendment of the return we do not see how the fact that it may have had an unclaimed deduction can come into litigation now. The taxpayer cannot recover under Section 26(f) because as shown above we do not think he has made out a claim. He cannot get a refund under Section 26(c)(3) because he did not state that Section as a ground when he filed his refund claim. Since he cannot get a refund under either provision the matter of whether the house repairs were a proper deduction has become history which cannot be changed.

The judgment of the District Court will be reversed.

McLAUGHLIN, Circuit Judge, dissents for the reasons expressed in the opinion of the Court below, 91 F.Supp. 859.

1945, 325 U.S. 293, 65 S.Ct. 1162, 89 L. Ed. 1619; Maas & Waldstein Co. v. United States, 1931, 283 U.S. 583, 589, 51 S.Ct. 606, 75 L.Ed. 1285; Rock Island, Arkansas & L. R. Co. v. United States, 1920, 254 U.S. 141, 143, 41 S.Ct. 55, 65 L.Ed. 188; Nichols v. United States, 1868, 7 Wall. 122, 126, 19 L.Ed. 125.