**The SCHUYLKILL HAVEN TRUST COMPANY**

v.

**UNITED STATES of America.**

Civ. A. No. 32104.

United States District Court
E. D. Pennsylvania.

March 15, 1966.

558

Gordon W. Gerber, of Dechert, Price & Rhoads, Philadelphia, Pa., for plaintiff.

Drew J. T. O'Keefe, U. S. Atty., Philadelphia, Pa., Richard M. Roberts, Acting Asst. Atty. Gen., David A. Wilson, Jr., and Arthur L. Stern, Attys., Dept. of Justice, Washington, D. C., for defendant.

BODY, District Judge.

The principal question presented by the government's motion for summary judgment is whether a downward adjustment on taxpayer's books and records of the value of its bank building, furniture and fixtures in compliance with the Pennsylvania banking law constitutes a deductible loss within the meaning of Section 165 of the Internal Revenue Code of 1954.

The relevant facts have been stipulated by the parties. The plaintiff Trust Company instituted this civil action on September 26, 1962 to recover taxes assessed, collected and returned by the defendant, acting through the Commissioner of Internal Revenue, for the calendar years 1954, 1955 and 1956.

Taxpayer is a Pennsylvania corporation engaged in the business of banking. In October 1956 taxpayer moved the location of its office from 6 East Main Street, Schuylkill Haven, Pennsylvania, to 24–28 East Main Street in the same borough. Plaintiff's new bank had a

cost value of $189,891.09 and the furniture and fixtures therein had a cost value of $61,629.70.

The Banking Code of the Commonwealth of Pennsylvania [1] requires that a banking institution allocate no more than twenty-five percent of its combined capital and surplus to its banking house furniture and fixtures.

In 1956 taxpayer complied with the abovementioned statute by making a downward adjustment on its books and records of the value of its banking house and furniture and fixtures in the total amount of $101,510.79. The adjustment or "write down" was made as follows:

|  | Building | Furniture & Fixtures |
|---|---|---|
| Unadjusted: | $189,891.09 | $61,629.70 |
| Adjustment: | 98,232.97 | 3,277.82 |
| Balance: | $ 91,658.12 | $58,341.88 |

This downward adjustment satisfied the requirements of the state banking law since the costs on taxpayer's books of its building ($91,658.12) and furniture and fixtures ($58,341.88) then totalled $150,000.00 which was twenty-five percent of its capital ($150,000.00) plus surplus ($450,000.00), or exactly one-fourth of $600,000.00.

Taxpayer claimed a deduction of $101,510.79 on its federal income tax return for 1956. This deduction, which represented the total adjustment made by taxpayer, was disallowed in full and on October 23, 1959 the Internal Revenue Service assessed a deficiency of $7,813.14 plus interest thereon of $1,175.80 for the calendar year 1956. Taxpayer paid the deficiency under protest and on February 24, 1960 it filed timely claims for refund for the years 1954, 1955 and 1956.

The 1956 claim by taxpayer in the amount of $7,813.14 was based on the alleged ground that the adjustment of its asset values on its books pursuant to

1. Act of May 15, 1933, P.L. 624, Art. X, § 1015, as amended; Act of May 29, 1956, P.L. 1816, § 9; Act of July 26, 1961, P.L. 892, § 9; 7 Purd.Stat.Ann. § 819–1015.

the banking law of Pennsylvania had given rise to a deductible loss in 1956.[2]

In 1956 the bank also dedicated to the borough in which it is presently located a strip of its property worth $4,000.00, and also the cost of a new sidewalk, curbing and retaining wall ($4,380.00). Taxpayer argues that these dedications totalling $8,380.00 constituted a charitable contribution under Section 170 of the Internal Revenue Code, entitling it to an additional refund.

Plaintiff contends that its pre-trial memorandum, filed on February 17, 1964, clearly reveals at least the following two factual issues which are sufficient to preclude the entry of summary judgment in favor of the government:

1. Whether the "write down" by taxpayer of $101,510.79 was made voluntarily or solely because it was required to do so by state statute under threat and risk of irreparable harm[3]; and

2. Whether the property donated by the bank to the borough in 1956 was a gift made for public purposes and, if so, what was the value of the gift.[4]

The basis of the government's present motion under Federal Rule of Civil Procedure 56 is that these factual issues now raised by the plaintiff are irrelevant and therefore, even if they are admitted by the government, the Court must enter judgment in its behalf as a matter of law.

In order for the Court to properly dispose of the instant motion, we will discuss the allegations of the parties in two parts: first, with respect to the main issue of the "write down" made by the taxpayer on its books and records in 1956; and secondly, with respect to the property contributed to the borough by taxpayer in 1956.

I.

WHETHER THE ADJUSTMENT MADE BY TAXPAYER IN 1956 CONSTITUTES A DEDUCTIBLE LOSS UNDER SECTION 165 OF THE INTERNAL REVENUE CODE

The government's position is that a book entry such as that made by taxpayer in the instant case does not constitute a loss within the meaning of Section 165 of the Internal Revenue Code of 1954 which reads as follows:

(a) *General Rule.*—There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise. [26 U.S.C.1958 ed., Sec. 165]

Since Section 165 contemplates only a substantive economic loss, [Treasury Regulations on Income Tax (1954 Code), § 1.165–1(b); Electric Reduction Co. v.

---

2. Plaintiff claims it is entitled to the deduction in full of $101,510.79 for 1956 which, if allowed, would result in a loss to be carried back to the years 1954 and 1955. [See Complaint, Exhibits A, B and C].

3. On this major issue of whether the "write down" was a loss in 1956, counsel for plaintiff contended on oral argument that the factual issues thereon could be broken into three parts:
   (a) Did the bank write down the value of its banking property solely because of a statute?
   (b) If it was a write down, solely because of the statute, what would have been the consequence of not complying with the statute?
   (c) What is the loss that would have been suffered had taxpayer not complied

with the statute as compared to the loss that would be suffered as a result of compliance?

4. Plaintiff maintains that in the event of a favorable fact finding by a jury on the above two issues, it would be legally entitled to:
   (1) A loss of $58,580.73 in 1956 of which $41,512.52 would be carried back to 1954 and the balance of the carryback, or $17,068.21, would be applied against the bank's taxable income for 1955, producing tax refunds of $7,813.14 plus interest for 1956, $6,977.20 plus interest for 1954, and $15,946.57 for 1955; and
   (2) A deduction of $8,380.00 in 1956 with a tax refund of approximately $2,514.00 plus interest.

Lewellyn, 11 F.2d 493, 494 (3rd Cir. 1926)], according to the government's theory, a mere "write down" cannot qualify as such regardless of whether it was made voluntarily by taxpayer bank or whether it was done in order to comply with the banking laws of Pennsylvania.

■■ To be deductible a loss must also be evidenced by a closed and completed transaction during the taxable year. [Treasury Regulations on Income Tax (1954 Code), § 1.165–1(d)] In the present case, taxpayer merely alleges that by reason of the "write down" its business somehow declined in value because it was restricted in its ability to make loans. This decline in value, if any, cannot of itself qualify as a loss under Section 165. United States v. S. S. White Dental Mfg. Co., 274 U.S. 398, 47 S.Ct. 598, 71 L.Ed. 1120 (1927); Gulf Power Co. v. Commissioner, 10 T.C. 852 (1948).

Here the loss allegedly sustained by taxpayer has not been realized in the form of a sale of assets below cost, the abandonment of a piece of property as worthless, or some other fixed and identifiable event. In fact, all that occurred was the making of a formal bookkeeping entry which did not reflect a parting with any assets. [5 Mertens, Federal Income Taxation, § 28.05]

■ Plaintiff nevertheless maintains that whenever state law requires conduct on the part of the taxpayer, the Internal Revenue Service is bound by the tax consequences produced by taxpayer's compliance with that law. The Court cannot agree with this general principle

as stated by taxpayer. The law is clear that accounting rules and other regulations of both state and federal regulatory bodies are not binding for the purpose of determining federal income tax consequences.[5]

■■ Taxpayer has misplaced its reliance on the authorities cited in its brief.[6] Federal courts are not bound by state law when interpreting the meaning of the federal tax law. The determination of what constitutes a loss under Section 165 of the Internal Revenue Code is clearly a federal question. I have already concluded that under federal law this bookkeeping adjustment is not a loss cognizable under Section 165 regardless of whether it was made voluntarily or solely for the purpose of complying with state law.[7]

In conclusion, then, the government is entitled to summary judgment as to this segment of the case since the taxpayer is not entitled to the refund even if the Court decides the factual issues in taxpayer's favor.

II.

WHETHER THE COURT HAS JURISDICTION OVER TAXPAYER'S CLAIM TO A DEDUCTION UNDER SECTION 170 OF THE INTERNAL REVENUE CODE OF 1954

On this question the government's argument, simply stated, is that the only issue properly before the Court is whether taxpayer is entitled to a loss deduction because of the required accounting adjustment, an issue which we have already decided against taxpayer. There-

---

5. Old Colony R. Co. v. Commissioner of Internal Revenue, 284 U.S. 552, 52 S.Ct. 211, 76 L.Ed. 484 (1931) and cases following it.

6. Blair v. Commissioner of Internal Revenue, 300 U.S. 5, 57 S.Ct. 330, 81 L.Ed. 465 (1937); Freuler v. Helvering, 291 U.S. 35, 54 S.Ct. 308, 78 L.Ed. 634 (1934); Title & Trust Co. of Florida v. United States, 243 F.Supp. 42 (M.D.Fla. 1965); Smith Hotel Enterprises, Inc. v. Nelson, 236 F.Supp. 303 (E.D.Wis. 1964).

7. If taxpayer had, in fact, sustained a bona fide loss which was caused by its mandatory compliance with state law, the Internal Revenue Service would be required to recognize such loss under § 165 and in that sense would be bound by the consequences of a compliance with state law. However, this assumes a bona fide loss, the precise factor absent in the instant case.

fore, the government contends that summary judgment must also be entered in its behalf with regard to the claim of the alleged charitable contribution of $8,380.00 made by taxpayer in 1956 because the Court lacks jurisdiction to consider the latter claim, regardless of the existence of factual issues.

The government indicates, and the Court finds as a fact, that taxpayer did not include this item, representing the value of the property dedicated to the borough, in its tax return for 1956. Neither does the item appear in the claim for refund filed on February 24, 1960 for the years 1954, 1955 and 1956 [8] or in its complaint.

It is therefore the government's position that taxpayer cannot now raise this charitable deduction claim because it was not included in the original refund claims and the statute of limitations for amending the claims for refund has already run.

Both the Code [9] and the Regulations [10] require the filing of a refund claim prior to the institution of a civil suit for refund. This procedure is designed to apprise the Commissioner of what subject matter to review and he can take the claim at face value and examine only those grounds to which his attention has been directed. United States v. Garbutt Oil Co., 302 U.S. 528, 58 S.Ct. 320, 82 L.Ed. 405 (1938). As a corollary to this general principle, a taxpayer may not advance one ground or legal theory in his claim filed with the Commissioner and rely upon an entirely different ground or theory in a subsequent suit for refund. United States v. Felt & Tarrant Mfg. Co., 283 U.S. 269, 51 S.Ct. 376, 75 L.Ed. 1025 (1931); Carmack v. Scofield, 201 F.2d 360 (5th Cir. 1953). Neither may a claimant raise a wholly new factual basis for his claim at the later trial. Dascomb v. McCuen, 73 F.2d 417 (2d Cir.

8. The refund claim for 1956 explicitly referred to a brief submitted by taxpayer to the Internal Revenue Service on December 16, 1958. The only argument raised in that brief is that taxpayer is entitled to a loss deduction because of the accounting adjustment made on its books. No mention was made of a claim based upon charitable contributions.

9. Int.Rev.Code of 1954, § 7422(a) provides:
"(a) No suit prior to filing claim for refund.—No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary or his delegate, according to the provisions of law in that regard, and the regulations of the Secretary or his delegate established in pursuance thereof."
The 1939 Code, Int.Rev.Code of 1939, § 3772(a), 53 Stat. 465, contained a like requirement.

10. Treas.Reg. § 301.6402–2 (1954), as amended, T.D. 6585, 1962–1 Cum.Bull. 290 provides:
"(a) Requirement that claim be filed.
(1) Credits or refunds of overpayments may not be allowed or made after the expiration of the statutory period of limitation properly applicable unless, before the expiration of such period, a claim therefor has been filed by the taxpayer. Furthermore, under section 7422, a civil action for refund may not be instituted unless a claim has been filed within the properly applicable period of limitation.
(2) The claim, together with appropriate supporting evidence, must be filed in the office of the district director for the internal revenue district in which the tax was paid.
(b) Grounds set forth in claim.
(1) No refund or credit will be allowed after the expiration of the statutory period of limitation applicable to the filing of a claim therefor except upon one or more of the grounds set forth in a claim filed before the expiration of such period. The claim must set forth in detail each ground upon which a credit or refund is claimed and facts sufficient to apprise the Commissioner of the exact basis thereof. The statement of the grounds and facts must be verified by a written declaration that it is made under the penalties of perjury. A claim which does not comply with this paragraph will not be considered for any purpoe as a claim for refund or credit." [26 C.F.R., Sec. 301.6402–2]

1934), cert. den. Chandler v. McCuen, 295 U.S. 737, 55 S.Ct. 649, 79 L.Ed. 1685 (1934).

In Nemours Corp. v. United States, 188 F.2d 745 (3rd Cir. 1951), cert. den. 342 U.S. 834, 72 S.Ct. 50, 96 L.Ed. 631 (1951), Judge Goodrich commented:

"This is hard law, no doubt. Perhaps it is necessarily strict law in view of the scope of the operations of a fiscal system as large as that of the United States. Whether that is so we are not called upon to say. We apply the rule; we do not make it. It is to be observed that recovery of claims against the Government has always been the subject of a strict compliance requirement. The recovery of claims for tax refunds is but an application of this broad and strict rule." Id. at 750.

Taxpayer concedes that the claim for a charitable deduction of $8,380.00 was mentioned for the first time in its pretrial memorandum filed on February 17, 1964. However taxpayer maintains that summary judgment should not be entered against it with respect to this item because the government was otherwise informed of the existence of said ground and was not unfairly surprised or prejudiced by it. The Court has carefully examined the authorities cited by taxpayer which allegedly support this test of "surprise." Goelet v. United States, 266 F.2d 881 (2d Cir. 1959); Scovill Mfg. Co. v. Fitzpatrick, 215 F.2d 567 (2d Cir. 1954); Westchester Fire Ins. Co. v. United States, 138 F.Supp. 788 (S.D.N.Y. 1955); Bouchard v. United States, 143 F.Supp. 5 (E.D.Wis.1956). Taxpayer has misplaced its reliance upon those decisions. For example, in the *Westchester Fire* case, supra, the Court stated:

"The practical test is whether the refund claim was sufficiently broad to have led the Commissioner in his investigation of the merits of the claim to a consideration of the facts now attempted to be pleaded." [138 F.Supp. at 790]

Under the above test it is difficult to conceive how the Commissioner in the instant case could have been led to a consideration of the facts surrounding the alleged charitable contribution when the claims for refund covering the years 1954, 1955 and 1956 were limited to the totally unrelated subject matter of a "write down" of the bank's building, fixtures and furniture.

■ In light of the Code and Regulations it is not surprising that no case has been found which supports the result that taxpayer would have us reach. The law in this Circuit is certainly to the contrary. Fidelity-Philadelphia Trust Co. v. United States, 222 F.2d 379 (3rd Cir. 1955); Nemours Corp. v. United States, 188 F.2d 745 (3rd Cir. 1951), cert. den. 342 U.S. 834, 72 S.Ct. 50, 96 L.Ed. 631 (1951). Since the charitable contribution item was not mentioned in any way in taxpayer's original claims for refund and the statute of limitations for amending them has expired, taxpayer is now totally barred from raising this additional ground.

The Court concludes, therefore, that the only issue raised by the pleadings is the question of the 1956 "write down" discussed earlier. There being no jurisdiction for the Court to consider the charitable contribution claim, it is unnecessary to discuss the possible factual issues involved therein.

### ORDER

And now, this fifteenth day of March, 1966, it is ordered that the Motion of the defendant, United States of America, for Summary Judgment be and the same is granted.