Alfred **BRODSKY** and Angelina Brodsky,
Plaintiffs,

v.

**UNITED STATES** of America,
Defendant.

No. 39711.

United States District Court
E. D. Pennsylvania.

Feb. 3, 1969.

Leonard Sarner, Philadelphia, Pa., for plaintiffs.

Stephen T. Lyons, Asst. U. S. Atty., Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

FULLAM, District Judge.

This case is a taxpayers' refund suit contesting the legality of a deficiency assessment of $658.00, plus interest of $95.73, which the taxpayers paid on October 2, 1964. When the case was called for trial, a stipulation of facts was submitted, and oral argument was heard on the legal issues.

The dispute involves the proper tax treatment of a lump sum payment of $15,701.28 made to the wife-taxpayer by the School District of Philadelphia on June 20, 1961. Mrs. Brodsky was discharged as a teacher by the School District on May 28, 1954, but on June 30, 1960 the Supreme Court of Pennsylvania held that the discharge was improper,[1] and Mrs. Brodsky was reinstated in February of 1961. During the period of discharge, Mrs. Brodsky engaged in other employment; however, she was ready, willing, and able to perform services as a public school teacher during this period. The lump sum payment represents the difference between her earnings through other employment during the period of discharge, and what her earnings would have been had she not been improperly discharged.

It is the taxpayers' contention that the lump sum payment should be treated as back pay within the meaning of section 1303 of the Int.Rev.Code of 1954, 68A Stat. 335.[2] If this position is correct,

---

1. Board of Pub. Ed. School District of Philadelphia v. Intille, 401 Pa. 1, 163 A. 2d 420 (1960).

2. SEC. 1303. INCOME FROM BACK PAY

(a) LIMITATION ON TAX.—If the amount of the back pay received or accrued by an individual during the taxable year exceeds 15 percent of the gross income of the individual for such year,

it is conceded that the original computation of tax liability by the taxpayers was correct and that a refund is due.[3]

There is no dispute that the requirements of section 1303(a) are met, but the government does dispute the taxpayers' contention that the payment was back pay within the meaning of section 1303(b).[4] To be considered as back pay, the funds must be "remuneration * * and other similar compensation * * for services performed * * *." Section 1303(b) (1). The government's position is that, since Mrs. Brodsky did not perform services during her period of discharge, section 1303(b) (1) is not applicable. This construction is too narrow, and it is rejected by this Court.

The government relies on Estate of Stearns v. Commissioner, 14 T.C. 420 (1950), aff'd per curiam, 189 F.2d 259 (6th Cir. 1951), to support its position. There the Tax Court held that back-pay treatment could not be accorded to a lump sum settlement of a suit brought by the taxpayer against his employer. Although the court at one point emphasized that part of section 1303 relating to "services performed", it is impossible to conclude definitely that this was the reason for the court's decision. A release was executed by Mr. Stearns in favor of his employer which waived his rights to breach of contract damages, employment, election as an officer of the company, and stock options. The court then concluded:

"It seems to us that the $15,000 which Stearns received on December 21, 1945, in * * * settlement * * * was not received as 'remuneration' for prior services rendered * * * 'the payment of which has been deferred by reason of the unusual circumstances of the type specified in the definition', as described by the conference committee·in its report." 14 T.C. at 425.

In point of fact, the court was apparently relying on the reason for deferment of payment (subparts (A) through (D) of section 1303(b) (1)), and not on when the services were rendered. In sum then, *Stearns* does not necessarily provide direct support for the government's position.

---

the part of the tax attributable to the inclusion of such back pay in gross income for the taxable year shall not be greater than the aggregate of the increases in the taxes which would have resulted from the inclusion of the respective portions of such back pay in gross income for the taxable years to which such portions are respectively attributable, as determined under regulations prescribed by the Secretary or his delegate.

(b) DEFINITION OF BACK PAY.— For purposes of this section, the term "back pay" means amounts includible in gross income under this subtitle which are one of the following—

(1) Remuneration, including wages, salaries, retirement pay, and other similar compensation, which is received or accrued during the taxable year by an employee for services performed before the taxable year for his employer and which would have been paid before the taxable year except for the intervention of one of the following events:

(A) bankruptcy or receivership of the employer;

(B) dispute as to the liability of the employer to pay such remuneration, which is determined after the commencement of court proceedings;

(C) if the employer is the United States, a State, a Territory, or any political subdivision thereof, or the District of Columbia, or any agency or instrumentality of any of the foregoing, lack of funds appropriated to pay such remuneration; or

(D) any other event determined to be similar in nature under regulations prescribed by the Secretary or his delegate.

* * * * *

(3) Payments which are received or accrued during the taxable year as the result of an alleged violation by an employer of any State or Federal law relating to labor standards or practices, and which are determined under regulations prescribed by the Secretary or his delegate to be attributable to a prior taxable year.

3. It is also stipulated that if this Court rules in the taxpayers' favor, the Commissioner's reduction of the taxpayers' 1961 medical deduction is also erroneous.

4. Plaintiffs rely on 1303(b) (1) (B) and (C), and 1303(b) (3).

Rev.Rule 57–566, 1957–2 Cum.Bull. 589, presents a factual situation similar to the one before this Court. A federal civil service employee, who was improperly suspended was allowed back-pay treatment of a lump sum payment for the suspension period.

The Commissioner cited 5 U.S.C. § 652 (b) (presently recodified and amended, 5 U.S.C. § 5596), which provided that a wrongfully discharged employee "shall for all purposes except the accumulation of leave be deemed to have rendered services during such period", as the basis for allowing back-pay treatment. The Pennsylvania Education Code does not contain a similar provision. However, nothing to the contrary is provided, and Mrs. Brodsky was in fact treated, for all purposes, as if she had rendered services to the school system during her period of discharge.[5] Therefore, assuming that section 1303(b) (1) requires either that actual services be performed, or that services be deemed to be performed, I am persuaded that there was constructive performance of services in this case.

There is also significant doubt that section 1303(b) (1) requires that services be actually or constructively performed. As Judge Disney pointed out in his dissenting opinion in *Stearns*, supra at 425, section 1303(b) (1) (B) applies to payments which would have been paid but for the intervention of a "dispute as to liability of the employer to pay such remuneration, which is determined after the commencement of court proceedings." Since the statute specifies the existence of a dispute and the institution of a lawsuit, it would appear that instances in which an employee leaves the employ of his employer, and subsequently sues for his lost wages,

are contemplated by the section.[6] Therefore, section 1303(b) (1) would apply to situations where an employee remains in the employ of his original employer, and situations in which the employee remains available to resume his employment, notwithstanding the fact he has undertaken interim employment during the litigation of his lawsuit. Under this interpretation, Mrs. Brodsky would clearly be entitled to the benefits of section 1303.

The payment in question was made to an employee pursuant to a contract for services. Under any common-sense appraisal of the realities of the situation, this was "back-pay." To hold otherwise would be utterly inconsistent with the apparent intent of Congress as expressed in section 1303.

In light of the disposition which I have made of the taxpayers' section 1303 (b) (1) (B) claim, it is not necessary to determine the alternative claims that section 1303(b) (1) (C) and section 1303 (b) (3) also apply. Furthermore, there is no necessity to decide whether it is permissible for the taxpayers to rely now on section 1305, relating to damage awards received pursuant to a judicial decree, even though this legal theory was not asserted in the refund claim filed with the Commissioner.[7]

## CONCLUSIONS OF LAW

1. This Court has jurisdiction over the parties and subject matter.

2. Venue is proper in this judicial district.

3. Section 1303 of the Int.Rev.Code of 1954, 68A Stat. 335, is applicable to the lump sum payment of $15,701.28 made to Mrs. Brodsky on June 20, 1961 by the Philadelphia School District.

5. See Supplemental Stipulation of Counsel.

6. See also, *Stearns*, supra at 426 [Opper, J., dissenting].

7. There is authority for the position that a taxpayer cannot rely on a legal theory in the District Court which did not appear on his claim for refund filed with the Commissioner. Schuylkill Haven

Trust Co. v. United States, 252 F.Supp. 557 (1966) (and cases cited therein). See 26 U.S.C. § 7422. In this case, since the facts underlying both legal theories would be the same, the reasons for the rule, to prevent prejudicing the government's interests and allowing complete administrative review by the Commissioner, would not require its application.

4. Plaintiffs are entitled to a refund in the amount of $753.73, and to have their tax liability for 1961 recomputed to reflect the fact that the Commissioner's reduction of their medical deduction for 1961 was improper.