WOBBERS, INCORPORATED, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

WOBBER BROTHERS, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

SCHWARTZ-KASSER IMPROVEMENT COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 36874, 36875, 36876. Promulgated June 8, 1932.

*F. E. Youngman, Esq.,* for the petitioners.
*H. A. Cox, Esq.,* for the respondent.

OPINION.

LANSDON: In his brief petitioners' counsel contends that profit from the sale of the Monterey theatres was erroneously reported by the partnership on the installment basis. He alleges that any profit arising from the transaction was taxable to the partnership in 1922, when the sale was made. We think such an issue is not properly before us. Profit from the sale was reported by the partnership on the installment basis and returns on such basis were accepted by the respondent. The corporation acquired the contract in exchange for stock and the issue here is whether the petitioners were in receipt of income when payments were collected under the contract. The year of election to report on the installment basis is not before us and any adjustment as to prior years is barred by the statute of limitations. We think the corporation, which stands in the place of the partnership by virtue of section 204 (a) (8) of the Revenue Act of 1924, must abide by the basis for reporting income elected by the partnership and allowed by the respondent. Cf. *Louis Werner Saw Mill Co.*, 26 B. T. A. 141.

The respondent has included in petitioners' income for 1924 amounts determined to have been collected under contracts of sale acquired in exchange for stock from a predecessor partnership, profit from the sales having been reported on the installment basis by the partnership. He has determined that section 204 (a) (8) of the Revenue Act of 1924 [1] is applicable and that the petitioners are taxable on the same basis as the predecessor partnership. It is clear from the facts that the transaction by which the corporation acquired the contracts from the partnership falls within the provisions of section 203 (a) (4) of the 1924 Act,[2] which is a reenactment of section 202 (c) (3) of the Revenue Act of 1921.

The petitioners contend that the corporation purchased the contracts for stock and that no profit arises to them until the cost has been recovered. They contend that any profit from the sale was realized by the partnership and that the corporation has sold nothing from which profit could be realized.

Section 202 (c) (3) of the 1921 Act and section 203 (a) (4) of the Revenue Act of 1924 provide that where property is exchanged for stock in a corporation by persons who thereafter control the corporation, no gain or loss will be recognized from the transaction. Section 204 (a) (8) provides that in such cases the basis for computing gain or loss from a sale or other disposition of the property will be the same as it would have been in the hands of those transferring it to the corporation. Under such provisions only real profits and losses are recognized. What would otherwise have been a taxable disposition of property is ignored, because the taxable entities are for all practical purposes the same. Individuals who did own the property now own stock of the corporation which owns it. In our opinion the above sections are applicable to installment contracts covering sales of property from which return of income was made on the installment basis. The new taxable entity acquires the uncollected contracts in a transaction from which no gain or loss is recognized and, applying the provisions of section 204 (a) (8), it is taxable on the basis determined for those from whom the contracts were acquired.

---

[1] (8) If the property (other than stock or securities in a corporation a party to a reorganization) was acquired after December 31, 1920, by a corporation by the issuance of its stock or securities in connection with a transaction described in paragraph (4) of subdivision (b) of section 203 (including, also, cases where part of the consideration for the transfer of such property to the corporation was property or money in addition to such stock or securities), then the basis shall be the same as it would be in the hands of the transferor, increased in the amount of gain or decreased in the amount of loss recognized to the transferor upon such transfer under the law applicable to the year in which the transfer was made; * * *

[2] (4) No gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock or securities in such corporation, and immediately after the exchange such person or persons are in control of the corporation; but in the case of an exchange by two or more persons this paragraph shall apply only if the amount of the stock and securities received by each is substantially in proportion to his interest in the property prior to the exchange.

The petitioner contends that subsection (f) of section 202 [3] excludes installment obligations from the purview of that section and makes the transferor partnership taxable on the unreported profit contained in future payments at the time the obligations were disposed of for stock. We do not see such a meaning in the provisions of section 202 (f). That section is merely a statutory authorization for reporting income on the installment basis, which had been permitted by the respondent's regulations for some time.

We think the respondent has correctly determined that the corporation is taxable on profit contained in each collection under the contracts as computed for the transferor partnership.

The parties are in controversy over the dates on which payments were received under the Monterey and Imperial contracts. The respondent has determined that two annual payments were made in 1924 under the Imperial contract, one on January 2, 1924, in the amount of $67,428.57 and one on December 29, 1924, in the amount of $64,000. He has determined that three semiannual payments were received in 1924 under the Monterey contract, one on January 2, 1924, in the amount of $4,480, one on June 30, 1924, in the amount of $4,360, and another on December 29, 1924, in the amount of $4,240. The petitioners contend that the payment of $64,000 under the Imperial contract was not received until January 2, 1925, and that the payment of $4,480 under the Monterey contract was received on December 28, 1923. We are convinced from the evidence that the petitioners are correct in their contention and have found as a fact above that the payments in controversy were received on the dates alleged by the petitioner, which dates coincide with the due dates under the contracts.

The respondent contends that the petitioners are estopped to deny that the payments were received in 1924, since collection of such amounts was reported on the consolidated income-tax return for 1924 and such information was relied upon by the respondent. He also alleges that, having stated in their original petitions that total collections under the contracts amounted to $144,508.57, the petitioners may not later change their position. The petitioners did not directly report collection of the items on their income-tax return. Such fact was determined by the respondent from a comparative balance sheet attached to the return, where the balance due under each contract was shown as of December 31, 1923, and December 31, 1924. While the balance sheets were part of the information fur-

---

[3] Nothing in this section shall be construed to prevent (in the case of property sold under contract providing for payment in installments) the taxation of that portion of any installment payment representing gain or profit in the year in which such payment is received.

nished by petitioners on their income-tax return, they are for the general purpose of showing assets and liabilities of the business and in our opinion can not serve as a basis to estop petitioners from proving the facts as to collection of certain income. In our opinion the respondent was not justified in relying on such information as the basis for his deficiency letter. As to statements in the original petitions, which are mere allegations, the petitioners have the right of amendment at any time.

At the close of the hearing the respondent amended his answer and alleged that, if the Board should find that the amounts in controversy were not collected in 1924, as he had determined, then they should be added to income for 1923 and 1925. He moved that the deficiencies determined for those years be increased accordingly. The Board has jurisdiction to determine income of the affiliated group for 1923, 1924 and 1925. Deficiencies were asserted for those years based on adjustments to income of the group and error has been alleged as to all three years. The amounts of $4,480 and $64,000, which we have found were collected in 1923 and 1925, respectively, should be included in the group income for such years. The resulting deficiencies should be allocated on the basis of the respective net incomes and the deficiencies determined against Wobbers, Incorporated, and the Schwartz-Kasser Improvement Company should be accordingly increased.

The petitioners contend that if collection of payments under the Imperial Theatre contract results in the receipt of taxable income, then they should be allowed to deduct from such income a proportionate part of the commissions paid for negotiating the sale. We have found that the partnership agreed to pay to two individuals commissions amounting to $69,777.09 for services in connection with the sale, one of whom was paid $25,000 in 1920 and 1921, while the other was to receive a percentage of each payment under the contract. In *Mrs. E. A. Giffin*, 19 B. T. A. 1243, we held that where real estate was sold and profit reported on the installment basis, the expenses incident to the sale served to reduce the selling price in determining the profit to be realized, thus being spread over the same period as the installment payments, and are not deductible in full in the year of sale. The facts of the instant case disclose, however, that on the partnership income-tax returns for 1920 and 1921 deductions were taken and allowed for the commissions paid in each of the years, which included all of the $25,000 commission. Since the petitioners must report profit from the contracts on the same basis as the predecessor partnership and since the corporation stands in the place of the partnership as to income from the contracts, the commissions which were allowed as deductions to the partnership

in earlier years may not enter into a computation of profit for the taxable year. Such a result would in effect be to allow a double deduction. As to the commission paid by the corporation in the taxable year, however, which was a percentage of the payment collected, we think a deduction should be allowed. No deduction on account of such payment has been allowed and on the basis established by the partnership the petitioners are entitled thereto.

It remains for us to determine the basis for depreciation on the Pantages Theatre property. There is no controversy over cost to the partnership of the entire property and it is agreed that the buildings had a useful life of 13 years on March 14, 1923, when acquired. The only controversy between the parties relates to allocation of the total purchase price between land and buildings. The respondent has determined that the cost of $925,000 should be apportioned between land and buildings in the respective amounts of $625,000 and $300,000. The petitioners would allocate $560,000 as cost of the land and $365,000 as cost of the buildings.

In support of their contention the petitioners offered the testimony of a real estate expert who owned the Pantages property at one time, knew it when the buildings were constructed in 1912 and 1913 and acted as agent for the partnership in acquisition of the property in 1923. He testified that in his opinion the whole property had a value of $1,250,000 in March, 1923, and that the value of the buildings at that time was $365,000. In explanation of his answer he testified that his opinion was partially based on his knowledge that the buildings had cost $241,500 when built in 1912 and 1913 and that according to records of the American Appraisal Company cost of building had increased during the period from 1913 to 1923 by 108 per cent.

The basis for computing depreciation on the property now owned by the corporation is cost to the predecessor partnership. Section 204 (a) (8), *supra.* Value of the property as of the date purchased by the partnership is material to the issue only to assist in providing a basis upon which to allocate the purchase price between land and buildings. The testimony is that on March 14, 1923, the buildings were worth $365,000 and the whole property had a value of $1,-250,000. For property having such value the partnership paid $925,-000. Must we say that of such amount $365,000 was paid for the buildings? We think not. When the values given by petitioners' witness are proportionately reduced to conform to actual cost we get a figure for cost of the buildings of $270,100, which is less than the respondent's determination.

In the circumstances we are of the opinion that respondent's allocation of cost to land and buildings, which is in accordance with entries made on the partnership books, results in a reasonable al-

lowance for depreciation. His determination of depreciation is approved.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

MURDOCK dissents.