JACK AMMANN PHOTOGRAMMETRIC ENGINEERS, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 85717.   Filed December 5, 1962.

*R. B. Cannon, Esq.*, for the petitioner.
*John J. King, Esq.*, for the respondent.

OPINION.

DAWSON, *Judge:* Respondent determined deficiencies in petitioner's income tax for the years 1954, 1955, and 1956 in the amounts of $38,231.69, $18,154.17, and $248,294.09, respectively.   By amendment to his answer, respondent redetermined the deficiency for the year 1956 to be $123,762.65.   Petitioner's returns for the years 1954 through 1956, made on the accrual basis and for a calendar year period, were filed with the district director of internal revenue, Austin, Texas.

The facts, completely stipulated by the parties, are not in dispute, and as stipulated are adopted as our findings of fact.

It appears from the record other issues here involved have been disposed of by agreement of the parties, leaving as the sole issue for decision whether petitioner realized in 1956 gain, in the amount of $518,949.64, as a result of petitioner's acquisition in that year of its own debt obligation solely in exchange for shares of its own stock.[1]

Petitioner is a Texas corporation engaged chiefly in surveying operations by means of aerial photography and in the manufacture and sale of maps produced from such aerial photographs.   Prior to 1954 petitioner's business had been operated as a sole proprietorship by its present principal stockholder, Jack J. Ammann.

Pursuant to contracts of sale entered into by Ammann and petitioner in January and April of 1954, Ammann transferred to petitioner during that year all of the assets of his sole proprietorship, including business assets, right to use the name "Jack Ammann Photogrammetric

---

[1] A second issue was postulated by respondent having to do with an adjustment in basis of the assets underlying the debt obligation should this Court determine petitioner realized no income in 1956 as a result of the acquisition of that obligation.   In view of our disposition of the first and primary issue, we find it unnecessary to reach this secondary question.

Engineers" and goodwill, for a stated consideration of $817,031.49. Petitioner paid Ammann the sum of $100,000 in cash and agreed to pay the balance, or $717,031.49, in annual installments of $60,000.

On their joint individual income tax return for the year 1954 Jack J. Ammann and his wife elected to report the gain realized by them on the sale of assets to the petitioner on the installment basis in accordance with the provisions of section 453, I.R.C. 1954.[2] This method of reporting was accepted by the Commissioner of Internal Revenue. ·

As of January 1, 1956, the unpaid balance of petitioner's obligation to Jack J. Ammann amounted to $624,540.08. Between January 1 and July 25, 1956, petitioner reduced its obligation to Ammann by $84,-316.68, leaving a balance due of $540,223.40. On July 25, 1956, petitioner, having found itself in need of additional working capital, consummated a plan of recapitalization. Pursuant to a part of this plan, Jack J. Ammann transferred the balance then due on petitioner's obligation to petitioner solely in exchange for 120,050 shares of petitioner's newly authorized capital stock having a market value of $4.50 per share. Ammann's adjusted basis for the $540,223.40 obligation transferred to petitioner on July 25, 1956, was $21,273.76. Others also participated in petitioner's plan of recapitalization, and, immediately after the consummation of that plan those individuals and companies who had transferred property and cash to petitioner pursuant thereto, were in "control" of petitioner, as that term is defined in section 368 (c) of the Code.

Immediately prior to the transfer to petitioner of its obligation, which had been characterized in Ammann's hands as an installment obligation under section 453, Jack J. Ammann had unreported installment gain of $518,949.64, based on the difference between the face amount of the obligation, $540,223.40, and Ammann's adjusted basis for the same, $21,273.76. This gain was realized by Ammann when he transferred the obligation to petitioner solely in exchange for 120,050 shares of petitioner's stock valued at $4.50 per share, but it was not *recognized* for tax purposes because of the intervention of the nonrecognition provisions of section 351.[3] Immediately after the consummation of its plan of recapitalization petitioner held its own

---

[2] All references herein are to the Internal Revenue Code of 1954 unless otherwise specified.

[3] SEC. 351. TRANSFER TO CORPORATION CONTROLLED BY TRANSFEROR.

(a) GENERAL RULE.—No gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock or securities in such corporation and immediately after the exchange such person or persons are in control (as defined in section 368(c)) of the corporation. * * *

Ammann actually *reported* his gain on this transfer in his 1956 joint return on the theory that the transfer amounted to the disposition of an installment obligation under sec. 453(d). However, upon being advised by counsel that gain on the transfer was not recognizable under sec. 351, *supra,* he filed a claim for refund in the full amount, which was subsequently allowed by the Joint Committee on Internal Revenue Taxation of the United States Congress.

obligation in the face amount of $518,949.64, which it thereafter canceled on its books.

It is petitioner's contention that it realized no income upon the receipts of its own obligation, regardless of the fact that as a result thereof such obligation was extinguished. On brief, petitioner strenuously argues that its side of the transfer is controlled solely by section 1032 to the exclusion of all other sections of the Code. Section 1032 provides in pertinent part that no gain or loss shall be recognized to a corporation on receipt of money or other property in exchange for stock of such corporation. Respondent does not deny that the *receipt* of the obligation is controlled by section 1032. He admits that no gain was recognized to petitioner upon *receipt* of the obligation, because of the nonrecognition provisions of section 1032. However, respondent argues "there was a disposition [by petitioner] of [an] installment obligation *after* the consummation of the nontaxable exchange either as a result of the merger of the estates of the debtor and creditor or by the direct action of the petitioner in cancelling the obligation."

We agree with respondent. Petitioner exchanged solely its own stock for an obligation characterized by the transferor thereof as an *installment obligation* within the meaning of section 453. Petitioner argues that the *receipt* (the statute speaks in terms of "receipt" by a corporation of money or other property in exchange for stock) of that obligation was controlled, vis-a-vis itself, by the nonrecognition provisions of section 1032. In contradistinction, we find that the *transfer* of the obligation was controlled by section 351 (which speaks in terms of nonrecognition of gain or loss if property "is transferred" to a corporation solely in exchange for stock). Section 351 allows, in the case of transfers of property to controlled corporations, the deferral of recognition of gain or loss on the part of the transferor. Because the corporate transferee is *controlled* by the transferor, recognition of gain or loss is merely postponed, and *the transferee simply steps into the transferor's shoes as regards the tax nature of the assets transferred.*

In this regard, we have previously held that where an obligation, characterized by the holder thereof as an installment obligation, is transferred to a corporation in a nonrecognition exchange, the transferee continues to characterize the obligation in the same manner as its transferor, i.e., as an installment obligation, and treats any disposition of that obligation in the same way in which its transferor would have treated it had there been no transfer. *Wobbers, Inc.*, 26 B.T.A. 322, 326 (1932). See also *Charles F. Meagher*, 20 B.T.A. 68 (1930), the

necessary implication of which is that the corporate recipient of installment obligations transferred pursuant to a nonrecognition exchange must categorize them in its hands as installment obligations for tax purposes.

The interplay between the installment obligation provisions of the Code and the nonrecognition provisions thereof has had a long history. Cf. *Charles F. Meagher, supra.* As late as 1938 Congress had remained silent on the question of the effect of the nonrecognition provisions of the Code upon the transfer of installment obligations. See *Wobbers, Inc., supra; Charles F. Meagher, supra,* and also *Advance Aluminum Castings Corporation* v. *Harrison,* 158 F. 2d 922 (C.A. 7, 1946), having to do with the effect of section 112(b) (6) of the Revenue Act of 1936 (now section 332 of the 1954 Code) upon the transfer of installment obligations.

This Court in *Wobbers,* and by implication in *Meagher,* had held that corporations receiving installment obligations pursuant to the nonrecognition provisions of the Code were required to categorize such obligations in their hands as installment obligations reportable on that basis. The Seventh Circuit, construing the Revenue Act of 1936 in *Castings,* held that in a complete liquidation of a subsidiary, the parent, receiving as a liquidating distribution obligations held by the subsidiary on the installment basis, was entitled to continue to categorize such obligations as installment debts and report them on that basis. The problem facing the *Castings* court under the 1936 Revenue Act had, however, been resolved by Congress in the Revenue Act of 1938, pursuant to which section 44 of that Act, dealing with installment obligations, was amended in order to specifically provide that if an installment obligation is distributed as a liquidating distribution by a subsidiary to its parent in a nonrecognition context then no gain or loss would be recognized to the subsidiary.

The importance of this amendment in the present context is that it was accompanied by a statement of the House Ways and Means Committee indicating legislative intent. That statement (Report of House Ways and Means Committee, No. 1860, 75th Cong., 3d Sess., p. 29 (1938)) recites in pertinent part:

In case an installment obligation is distributed in a tax-free liquidation of a corporation under section 112(b) (6) [sec. 332, I.R.C. 1954] of the bill, the recipient corporation is required, under section 113(a) (15) [sec. 362, I.R.C. 1954], to take the distributing corporation's basis and *is required to report upon the obligation received in the same manner as the distributing corporation would have been required to report it if such liquidation had not occurred. This accords with the treatment of the tax-free exchanges described in section 112(b) (4) and (5)* [secs. 361 and 351, respectively, I.R.C. 1954] *of the existing law.* [Emphasis supplied.]

Thus it seems clear to us under our own decisions, the decisions of other courts and the legislative history, just cited, that when an obligation, characterized as an installment obligation by the holder thereof, is transferred to a corporation in a nonrecognition exchange, such as section 351, the corporate transferee, merely stepping into the shoes of its transferor, must continue to characterize that obligation as an installment obligation in its own hands.

We therefore find that the obligation which petitioner received from Jack J. Ammann was an installment obligation in petitioner's hands. Petitioner's basis for that obligation is determined under section 362(a)[4] to be Ammann's basis, or $21,273.76. See sec. 1032(b). At the time of the transfer the obligation had a face value of $540,-223.40 which we also find as a matter of fact was its fair market value. Section 453(d) of the Code provides in pertinent part:

(d) GAIN OR LOSS ON DISPOSITION OF INSTALLMENT OBLIGATIONS.—

(1) GENERAL RULE.—If an installment obligation is * * * distributed, transmitted, sold or otherwise disposed of, gain or loss shall result to the extent of the difference between the basis of the obligation and—

\*    \*    \*    \*    \*    \*    \*

(B) the fair market value of the obligation at the time of distribution, transmission, or disposition, in the case of the distribution, transmission, or disposition otherwise than by sale or exchange.

Any gain or loss so resulting shall be considered as resulting from the sale or exchange of the property in respect of which the installment obligation was received.

When petitioner canceled, either by the physical act of making the appropriate book entries or by merger of the estates of creditor and debtor, its own obligation, held by it as an installment obligation, it "disposed of" an installment obligation within the meaning of section 453(d). Cf. *Burrell Groves, Inc.*, 22 T.C. 1134, (1954) and *Nebraska Seed Co.* v. *United States*, 116 F. Supp. 740 (Ct. Cl. 1953), certiorari denied 347 U.S. 1012 (1954). Accordingly, petitioner realized gain measured by the difference between its basis ($21,273.76) and the fair market value of the obligation ($540,223.40) or $518,949.64. Under section 453(d) such gain is to be considered as resulting from the sale or exchange of the property in respect of which the installment obligation was received (i.e., received by Ammann). If the obligation had been satisfied in Ammann's hands he would have had long-

---

[4] SEC. 362. BASIS TO CORPORATIONS.

(a) PROPERTY ACQUIRED BY ISSUANCE OF STOCK OR AS PAID-IN SURPLUS.—If property was acquired on or after June 22, 1954, by a corporation—

(1) in connection with a transaction to which section 351 * * * applies, * * *

\*    \*    \*    \*    \*    \*

then the basis shall be the same as it would be in the hands of the transferor, increased in the amount of gain recognized to the transferor on such transfer.

term capital gain in the amount of $492,579.57, short-term capital gain of $2,721.76, and ordinary income of $23,648.31. The gain to petitioner is likewise to be categorized.

It is our decision, therefore, that petitioner realized in 1956, as a result of the acquisition of its own installment obligation solely in exchange for shares of its stock, long-term capital gain of $492,579.57, short-term capital gain of $2,721.76, and ordinary income of $23,648.31, for a total gain of $518,949.64.

Our holding here is not unlike that of the Court of Claims faced with a similar situation in the case of *Nebraska Seed Co.* v. *United States, supra*, and discussed extensively by both parties on brief.[5] While we do not base our decision herein on the holding of the Court of Claims in *Nebraska Seed*, nevertheless we are in complete accord with that decision.

Because our decision herein will require certain adjustments between the parties,

*Decision will be entered under Rule 50.*

---

[5] The facts in that case are basically as follows. In 1944 Nebraska Seed Company sold certain assets to the Yankton Realty Company and the Ralston Operating Company, payment to be made on the installment basis. For each year thereafter, including 1947, Nebraska reported income from these sales on the installment basis. In 1947 Nebraska transferred all of its assets, including the Yankton and Ralston installment obligations, to United Seeds, Inc., solely in exchange for shares of United stock. Simultaneous with its acquisition of the Nebraska assets, United also acquired all of the assets and assumed all of the liabilities of Yankton and Ralston. At this point United, having stepped into Nebraska's shoes by virtue of the tax-free exchange, became both the creditor holding an installment obligation, and the debtor owing such obligation. At the time of the transfer from Nebraska there was a deferred gain on the installment obligations of $45,338.39. The Court of Claims held that the merger of creditor and debtor resulted in "extinguishing the liability on the installment obligation." In holding that the transaction represented the disposition of an installment obligation by United to whom the gain therefrom was to be taxed, the Court of Claims stated:

"The general purpose of the Congress [in enacting section 44(d) of the Revenue Act of 1928, now in part section 453(d) of the Internal Revenue Code of 1954] evidently was to require a taxpayer to report the deferred profits [gain] on an installment sale when that profit [gain] was realized. This was undoubtedly done when the asset received from Nebraska Seed Company by United Seeds, Inc., was offset by the liabilities assumed by United Seeds, Inc., when it acquired the assets of the Yankton Realty Company and the Ralston Operating Company."