**HEMPT BROS., INC., Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. No. 68–484.**

United States District Court, M. D. Pennsylvania.

Feb. 15, 1973.

---

James H. King, McNees, Wallace & Nurick, Harrisburg, Pa., Sheldon M. Bonovitz, John F. Fansmith, Jr., Duane, Morris & Heckscher, Philadelphia, Pa., for plaintiff.

S. John Cottone, U. S. Atty., Scranton, Pa., Scott P. Crampton, Asst. Atty. Gen., Tax Div., Dept. of Justice, Washington, D. C., David A. Wilson, Jr., Chief, Refund Trial Section No. 1, Dept. of Justice, Washington, D. C., Thomas R. Wechter, Donald R. Anderson, Daniel J. Dinan, Dept. of Justice, Washington, D. C., for defendant.

SHERIDAN, Chief Judge.

Plaintiff, Hempt Bros., Inc., seeks to recover income taxes alleged to have been improperly assessed and collected. Jurisdiction is asserted pursuant to 28 U.S.C.A. Section 1346(a)(1). The parties have filed a joint stipulation of facts, and plaintiff has moved for summary judgment. Briefs have been submitted and oral argument made with respect to plaintiff's motion.[1]

From 1942 until February 28, 1957, a partnership comprised of plaintiff's shareholders was engaged in the business of quarrying and selling stone, sand, gravel and slag; manufacturing and selling ready-mix concrete and bituminous materials; constructing roads, highways and streets, principally for the Pennsylvania Department of Highways and various political subdivisions of Pennsylvania; and constructing driveways, parking lots, street and water lines, and related accessories. The partnership maintained its books and filed its partnership income tax return on a calendar-year basis pursuant to the cash method of accounting. Accordingly, it included neither uncollected receivables nor inventories in its calculation of taxable income, although both items existed to a substantial extent at the end of each year.[2]

On March 1, 1957, the partnership's business and most of its assets were transferred to plaintiff solely in exchange for plaintiff's capital stock; neither gain nor loss was recognized upon the exchange. Int.Rev.Code of 1954, Section 351(a). Among the assets transferred were accounts receivable of $662,824.40 and inventories of $351,266.05.

Subsequent to the transfer, Hempt Bros., Inc. continued the business formerly conducted by the partnership. It reported its income on a fiscal-year basis commencing the first day of March. For all relevant years, plaintiff maintained its books and reported its income

---

1. Both parties have referred to a cross-motion for summary judgment made by defendant. No such motion appears in the record. However, resolution of the legal issues presented is clearly contemplated to the extent permitted by the stipulated facts; and, if appropriate, the court will enter summary judgment for defendant on its own motion. Missouri Pacific Railroad Company v. National Milling Company, Inc., 3 Cir. 1969, 409 F.2d 882, 885; Jackson v. Hammock, E.D.Pa.1971,

330 F.Supp. 1124; Peoples Trust Company of Bergen County v. United States, D.N.J.1970, 311 F.Supp. 1197, 1201, aff'd, 3 Cir. 1971, 444 F.2d 193; DeFelice v. Philadelphia Board of Education, E.D. Pa.1969, 306 F.Supp. 1345, 1348, aff'd per curiam, 3 Cir. 1970, 432 F.2d 1358; United States v. Cless, M.D.Pa.1957, 150 F.Supp. 687, aff'd, 3 Cir. 1958, 254 F.2d 590.

2. The propriety of the partnership's method of accounting is not in issue.

in accordance with the cash method of accounting. Amounts due on accounts receivable transferred from its predecessor were collected by the corporation and reported as corporate income in the year of collection. Plaintiff performed no other services with respect to the receivables.

As a result of an examination extending over a period of years, the Commissioner of Internal Revenue [3] determined that plaintiff's accounting method did not clearly reflect income. The corporation therefore was required to use the accrual method commencing with its first taxable year,[4] and adjustments were made to accrue unreported sales and to account for inventories in computing the cost of goods sold. Plaintiff's opening inventory for its first taxable year was valued at zero, and the result was an increase in taxable income for that year.

Hempt Bros., Inc. filed timely refund claims with respect to each of its first three taxable years in which it contended, inter alia, that amounts collected on transferred accounts receivable should be excluded from its income because the partnership performed all the services upon which the right to collection depended, and that its initial opening inventory should be valued at not less than $351,266.05 in order to consistently account for beginning and ending inventory during its first taxable year. Each claim was disallowed in full, and plaintiff then instituted this action to recover alleged overpayments.

With respect to the transferred accounts receivable, plaintiff argues that they are not "property" within the meaning of Section 351(a) and that the partnership therefore realized recogniz-

able income at the time it exchanged them for plaintiff's stock; that the rule enunciated in Commissioner v. P. G. Lake, Inc.[5] requires attribution of ordinary income to the partnership at the time of the exchange; that the assignment-of-income doctrine requires its predecessor to recognize income as amounts are collected by plaintiff; that attribution of collections to plaintiff is improper because inconsistent with its accrual method of accounting; and that the individual partners should be responsible for the accounts receivable because the amount of plaintiff's stock which each partner received was allocated pursuant to proportional interests in the partnership's capital account rather than with reference to individual shares in transferred income items. These points will be discussed seriatim.

■ The meaning of "property" is not defined by Section 351; however, known inclusions and exclusions suggest that the term encompasses whatever may be transferred,[6] including accounts receivable. Burke, Section 351: The Beginning of Life in Subchapter C, 1970, 24 Sw.L.J. 742, 747–48; see Bongiovanni v. Commissioner, 470 F.2d 921 (2 Cir., filed Dec. 11, 1972); P. A. Birren & Son, Inc. v. Commissioner, 7 Cir. 1940, 116 F.2d 718; Peter Raich, 1966, 46 T.C. 604; Pittsfield Coal & Oil Company, Incorporated, 1966, 25 CCH Tax Ct. Mem. 11; Arthur L. Kniffen, 1962, 39 T.C. 553; Ezo Products Company, 1961, 37 T.C. 385; Thomas W. Briggs, 1956, 15 CCH Tax Ct. Mem. 440; Wobbers, Incorporated, 1932, 26 B.T.A. 322; Charles F. Meagher, 1930, 20 B.T.A. 68; cf. Halliburton v. Commissioner, 9 Cir. 1935, 78 F.2d 265, 268–270; American Bantam Car Company, 11 T.C. 397, 403, aff'd per curiam, 3 Cir. 1949, 177 F.2d

---

3. Hereinafter "Commissioner."

4. The parties agree that the Commissioner's determination was proper.

5. 1958, 356 U.S. 260, 78 S.Ct. 691, 2 L.Ed. 2d 743. In *Lake*, it was held that the transfer of an income interest in land, e. g., a carved-out oil payment, in exchange for consideration equivalent to the

present value of future payments derivable therefrom constituted ordinary income to the transferor and not capital gain. It was also decided that a similar assignment in return for an interest in real estate was not a like-kind exchange.

6. H. B. Zachry Company, 1967, 49 T.C. 73, 80 n. 6.

513, cert. denied, 1950, 339 U.S. 920, 70 S.Ct. 622, 94 L.Ed. 1344. *But see* Merchants Bank Bldg. Co. v. Helvering, 8 Cir. 1936, 84 F.2d 478, 481; Note, Section 351 of the Internal Revenue Code and "Mid-Stream" Incorporations, 1969, 38 U.Cin.L.Rev. 96, 106–07. There is a compelling reason to construe "property" to include potential income items: a new corporation needs working capital, and accounts receivable can be an important source of liquidity. *Cf.* Halliburton v. Commissioner, 9 Cir. 1935, 78 F.2d 265, 269–70; Bittker, The Corporation and the Federal Income Tax: Transfers to a Controlled Corporation, 1959 Wash. U.L.Q. 1, 7.

■■■■■ *Lake* is not on point because it does not involve the issue of income recognition upon the exchange of an item of potential income for stock in a controlled corporation. H. B. Zachry Company, 1967, 49 T.C. 73, 79–80. As the legislative history of a predecessor to Section 351 [7] makes clear,[8] the purpose of the provision is to facilitate movement into the corporate form by preventing immediate recognition of gain or loss when there has been a mere change in the form of ownership. Helvering v. Cement Investors, Inc., 1942, 316 U.S. 527, 533, 62 S.Ct. 1125, 86 L. Ed. 1649; Bongiovanni v. Commissioner, 470 F.2d 921 (2 Cir., filed Dec. 11, 1972); Estate of Walling v. Commissioner, 3 Cir. 1967, 373 F.2d 190, 194; Mather & Co. v. Commissioner, 3 Cir., 171 F.2d 864, cert. denied, 1949, 337 U. S. 907, 69 S.Ct. 1049, 93 L.Ed. 1719; Portland Oil Co. v. Commissioner, 1 Cir., 109 F.2d 479, 488, cert. denied, 1940, 310 U.S. 650, 60 S.Ct. 1100, 84 L.Ed. 1416. Therefore, when a cash-method taxpayer transfers accounts receivable to a controlled corporation solely in exchange for securities therein, the recognition of any gain realized upon the exchange is deferred. Arthur L. Kniffen, 1962, 39 T.C. 553; Charles F. Meagher, 1930, 20 B.T.A. 68. This best comports with the policy of Section 351. Dauber, Accounts Receivable in Section 351 Transactions, 1966, 52 A.B.A.J. 92; Hickman, Incorporation and Capitalization, 1962, 40 Taxes 974, 979; Riebesehl, Tax-Free Incorporations Under Section 351, 1968, 46 Taxes 360.

However, the question of non-recognition upon the exchange itself is distinct from the issue whether the partnership or the corporation is taxable when collections upon transferred receivables are made. H. B. Zachry Company, 1967, 49 T.C. 73, 80 n. 5. Plaintiff contends that such amounts are properly attributable to its predecessor at the time of collection because the partnership performed all the services upon which the right to payment depends.[9]

---

7. Int. Rev. Code of 1921, ch. 136, Section 202(c)(3), 42 Stat. 230.

8. S.Rep. No. 275, 67th Cong., 1st Sess. 11 (1921):
 "Section 202 (subdivision c) provides new rules for those exchanges or 'trades' in which, although a technical 'gain' may be realized under the present law, the taxpayer actually realizes no cash profit. . . . The existing law makes a presumption in favor of taxation. The proposed act modifies that presumption by providing . . . certain classes of exchanges on which no gain or loss is recognized even if the property received in exchange has a readily realizable market value. These classes comprise the cases . . . where an individual or individuals transfer property to a corporation and after such transfer are in control of such corporation.

"The preceding amendments, if adopted, will, by removing a source of grave uncertainty and by eliminating many technical constructions which are economically unsound, . . . permit business to go forward with the readjustments required by existing conditions. . . ."

9. *See, e. g.,* Lucas v. Earl, 1930, 281 U.S. 111, 50 S.Ct. 241, 74 L.Ed. 731. The assignment-of-income doctrine is a common-law acknowledgment that the dominant purpose of the revenue laws is the taxation of income to those who earn it or who otherwise create the right to receive and to enjoy the benefit of it when paid, rather than to tax a mere collector or conduit through whom income passes. Helvering v. Horst, 1940, 311 U.S. 112, 119, 61 S.Ct. 144, 85 L.Ed. 75.

■ There is a tension which inheres in Section 351: although its animating concept is that of a mere change in form of ownership, the act of incorporation yields an entity distinct from its predecessor which may independently select many of its characteristics, e. g., its accounting period and its methods of accounting, depreciation and inventory valuation. White, Sleepers That Travel With Section 351 Transfers, 1970, 56 Va.L.Rev. 37. Therefore, it would be erroneous to assume that the assignment-of-income doctrine is necessarily inapplicable. Biblin, Assignments of Income in Connection with Incorporating and Liquidating Corporations, 1969, 21 U.So. Cal.Tax Inst. 383, 385–87. However, for reasons to be enumerated, the court holds that Hempt Bros., Inc. is properly taxable upon collections made with respect to accounts receivable which have been transferred to it in conjunction with the Section 351 incorporation of a going business by a cash-method partnership for a legitimate business purpose.

■ The market value of the receivables notwithstanding, they had a basis of zero to the partnership because

no collections were made prior to the transfer. Bongiovanni v. Commissioner, 470 F.2d 921 (2 Cir., filed Dec. 11, 1972); P. A. Birren & Son, Inc. v. Commissioner, 7 Cir. 1940, 116 F.2d 718, 720; Peter Raich, 1966, 46 T.C. 604, 610; Note, Section 357(c) and the Cash Basis Taxpayer, 1967, 115 U.Pa.L.Rev. 1154, 1165. Since the exchange was solely for stock, plaintiff's carryover basis was also zero. Int.Rev.Code of 1954, Section 362(a), as construed in, e. g., Ezo Products Company, 1961, 37 T.C. 385, 392–93. Upon collection, plaintiff realized income which it must recognize to the extent that the amounts received exceed basis. P. A. Birren & Son, Inc. v. Commissioner, 7 Cir. 1940, 116 F.2d 718, 720; Thomas W. Briggs, 1956, 15 CCH Tax Ct. Mem. 440; accord, Divine v. United States, W.D.Tenn.1962, 62–2 U.S. Tax Cas. 85,589; Sohmer & Co., Inc. v. United States, S.D.N.Y.1949, 86 F.Supp. 670, 671; Wobbers, Incorporated, 1932, 26 B.T.A. 322; see Pittsfield Coal & Oil Company, Incorporated, 1966, 25 CCH Tax Ct. Mem. 11.

■ This result facilitates the basic policy of Section 351.[10] Arent, Realloca-

10. In general, cases which have attributed income to the transferor involve circumstances not present in the record before the court:

Commissioner v. Griffiths, 7 Cir., 103 F.2d 110, aff'd, 1939, 308 U.S. 355, 60 S.Ct. 277, 84 L.Ed. 319, is a case in which the taxpayer devised an intricate tax-avoidance scheme to use a controlled corporation as a conduit to defer immediate recognition of amounts paid in settlement of a claim.

In Brown v. Commissioner, 2 Cir. 1940, 115 F.2d 337, the taxpayer personally received payment which he then endorsed to the corporation. In addition, the court found the corporation to be a sham the sole purpose of which was tax avoidance.

Clinton Davidson, 1941, 43 B.T.A. 576, held that a life insurance broker who transferred his going business to a controlled corporation whose agent he then became for the purpose of procuring insurance contracts was personally taxable on commissions generated by such contracts because he had earned

them; the contracts were treated as his business; he and not the corporation was licensed as an insurance broker; insurance companies, as a general rule, decline to appoint corporations as agents; and Davidson personally received payment which he then endorsed to the corporation.

Adolph Weinberg, 1965, 44 T.C. 233, aff'd per curiam sub nom. Commissioner v. Sugar Daddy, Inc., 9 Cir. 1967, 386 F.2d 836, cert. denied, 1968, 392 U.S. 929, 88 S.Ct. 2282, 20 L.Ed.2d 1388, involves a cash-method transferor who directed his obligors to deposit proceeds due him from the sale of crops into the accounts of a number of controlled corporations. The court found the transferor taxable with respect to such proceeds because he had performed all services upon which the right to collection depended and because no plausible business purpose was shown for the existence of the corporations except as shells or conduits for sales proceeds.

The foregoing cases illustrate, inter alia, the principle that income will not be

tion of Income and Expenses in Connection with Formation and Liquidation of Corporations, 1962, 40 Taxes 995, 996; Biblin, supra, at 407; Burke, supra, at 795; Hickman, supra, at 977–83; White, supra, at 46; Worthy, IRS Chief Counsel Outlines What Lies Ahead for Professional Corporations, 1970, 32 J. Tax. 88, 90. *But see* Note, 38 U.Cin.L. Rev., supra, at 112–13. Moreover, it is especially apposite because the partnership operated a business in which expenses were paid and income was earned in the accounting period prior to that in which collections were made and income was realized. Under these circumstances, taxation to the partnership would deter incorporation by generating a significant amount of taxable income for which there might be no off-setting deductions: matching expenses of post-incorporation collections would already have been deducted, and expenses subsequent to incorporation would be deductible by the transferee. Weiss, Problems in the Tax-free Incorporation of a Business, 1966, 41 Indiana L.J. 666, 681 & n.65. In addition, it seems anomalous to require the partnership to account for income which it never received and to which it cannot gain access without the declaration of a taxable dividend. Biblin, supra, at 408; Burke, supra, at 795; Tritt and Spencer, Current Tax Problems in Incorporation of a Going Business, 1958, 10 U.So.Cal.Tax Inst. 71, 95.

In support of its contention, plaintiff relies upon the persuasive force of the application of the assignment-of-income doctrine to transactions the tax consequences of which are regulated by Section 311,[11] Section 336[12] and Section 337.[13] However, other analogies are

shifted to the transferee if it appears that the exchange was motivated primarily by tax avoidance rather than being made for a legitimate business purpose. This requirement will not be found in the language of Section 351, but it appears to be fundamental to the provision. 3 Mertens, Law of Federal Income Taxation Section 20.46 at 127–33; *see* Blanc, The Tax Treatment of Reserves Upon a Change in the Form of Doing Business, 1967, 19 U. So.Cal. Tax Inst. 433, 474 n. 108; Lyon and Eustice, Assignment of Income: Fruit and Tree as Irrigated by the P. G. Lake Case, 1962, 17 Tax L.Rev. 293, 425–26. *Weinberg* is troublesome because its language implies that the assignment-of-income doctrine might apply regardless of whether the primary purpose of the transfer is tax avoidance. Nevertheless, this court believes that *Weinberg* is properly limited to its facts. *See* Biblin, supra, at 391–94. Since both parties agree that Hempt Bros., Inc. received the assets of its predecessor in an exchange made for a legitimate business purpose in which tax avoidance played no part, attribution pursuant to the assignment-of-income doctrine is improper.

11. Int.Rev. Code of 1954, Section 311. The legislative history of the provision makes explicit that it is not intended to alter the principle enunciated in Commissioner v. First State Bank of Stratford, 5 Cir. 1948, 168 F.2d 1004, viz., that the assignment-of-income doctrine applies to a corporation which declares a dividend the substance of which is the right to receive ordinary income. S.Rep. No. 1622, 83rd Cong., 2d Sess. 247 (1954). No similar endorsement appears in either the legislative history or the cases regarding Section 351.

12. Int.Rev. Code of 1954, Section 336. This section and Section 311 are intended to be parallel provisions; to properly implement the legislative intent, the Bank of Stratford rule should be consistently applied to both of them. Williamson v. United States, Ct.Cl.1961, 292 F.2d 524, 155 Ct.Cl. 279; Lyon and Eustice, supra, at 396–97. Furthermore, a failure to attribute ordinary income to the distributing corporation might yield complete tax avoidance in many cases: the corporation could not be taxed on amounts collected because its existence would have terminated and its property would have passed to the shareholders; the shareholders might acquire a stepped-up basis in the distributed income items which would allow them to amortize market value against income as collections were made. Blanc, supra, at 451–52. This result does not obtain with respect to Section 351 because the transferee's basis is assessed with reference to that of its predecessor pursuant to Section 362.

13. Int.Rev. Code of 1954, Section 337. The purpose of Section 337 is to eliminate the problem exemplified in Commissioner v. Court Holding Co., 1945, 324 U.S. 331,

more instructive,[14] especially those involving corporate reorganization.[15]

It is also argued that taxation to the transferor will have no deleterious effect on incorporation because a rational taxpayer is unlikely to transfer items of potential income and expense to a controlled corporation in any event due to alleged uncertainty whether the Commissioner will seek to apply the assignment-of-income doctrine; whether transferred accounts payable will be deductible by the transferee upon payment;[16] and whether gain will be

65 S.Ct. 707, 89 L.Ed. 981, and United States v. Cumberland Public Service Co., 1950, 338 U.S. 451, 70 S.Ct. 280, 94 L.Ed. 251, in order to permit the same tax consequences to a liquidating corporation whether it sells its assets or distributes them to its shareholders for sale. S.Rep. No. 1622, 83rd Cong., 2d Sess. 258 (1954). Since the provision was enacted to eliminate a formalistic inequity rather than to create one, the assignment-of-income doctrine is properly applied to Section 337 in the same manner as it applies to Section 336. Commissioner v. Kuckenberg, 9 Cir. 1962, 309 F.2d 202. In addition, its legislative history indicates unambiguously that Congress did not intend to exempt from corporate taxation income from sales in the ordinary course of business. S.Rep. No. 1622, 83rd Cong., 2d Sess. 259 (1954). Since the underlying operations which generate ordinary income are not exempt, accounts receivable arising therefrom are properly taxable to the corporation. Note, Tax-free Sales in Liquidation Under Section 337, 1963, 76 Harv.L.Rev. 780, 795.

14. For example, Sections 1245(b)(3) and 1250(d)(3) expressly exclude the Section 351 exchange from recapture of excess depreciation because the transferee receives a carryover basis in which recapture potential is preserved. This is in contradistinction to other transactions, e. g., pursuant to Sections 311, 336 and 337, in which the recapture exemption is denied when the transferee's basis and holding period are assessed independently of those of its transferor. Blanc, supra, at 443–46; O'Hare, Statutory Nonrecognition of Income and the Overriding Principle of the Tax Benefit Rule in the Taxation of Corporations and Shareholders, 1972, 27 Tax L.Rev. 215, 217–18 & n. 13.

Consider, too, the treatment of installment obligations, a type of account receivable. When the Section 351 transferor has performed all the services upon which the right to payment depends, a shift of attribution with respect to future installments would seem unlikely; yet, that is the result. Lyon and Eustice, supra, at 427. Not only is the exchange not deemed a "disposition," but any post-transfer amounts received in payment have the same character to the transferee which they would have had in the hands of the transferor. Treas.Reg. Sections 1.453–9(c)(2) (1958) and 1.453–9(c)(3) (1958). In particular, amounts collected in excess of basis are taxable as profit to the transferee. Divine v. United States, W.D.Tenn.1962, 62–2 U. S. Tax Cas. 85,589; Wobbers, Incorporated, 1932, 26 B.T.A. 322; H.Rep.No.1860, 75th Cong., 3d Sess. 29 (1938).

15. Int.Rev.Code of 1954, Section 381. Both cases and commentators recognize the close relationship between Section 351 and the reorganization provisions. Helvering v. Cement Investors, Inc., 1942, 316 U.S. 527, 533–34, 62 S.Ct. 1125, 86 L.Ed. 1649; Blanc, supra, at 473–74 & n.108; Bonovitz, Restoration to Income of Bad Debt Reserves, 1966, 44 Taxes 300, 307–08. The exclusion of Section 351 from those transfers to which Section 381(c) applies creates no negative pregnant with respect to the incidence of taxation under the former section. H.Rep. No.1337, 83rd Cong., 2d Sess. A135 (1954); S.Rep.No.1622, 83rd Cong., 2d Sess. 276–77 (1954); White, supra, at 38 n. 8. To the contrary, the philosophy of reorganization is that the propriety of carryover attribution should depend upon economic reality and substance rather than upon the form of a transaction. H.Rep.No.1337, 83rd Cong., 2d Sess. 41 (1954); S.Rep.No.1622, 83rd Cong., 2d Sess. 52 (1954). Presumably, a similar concern should animate analysis of consequences pursuant to Section 351.

16. See, e. g., Merchants' Bank Bldg. Co. v. Helvering, 8 Cir. 1936, 84 F.2d 478.

On March 1, 1957, the Board of Directors of Hempt Bros., Inc. resolved to acquire the partnership's receivables, payables and inventory in exchange for stock. The corporation does not contend that it was disallowed deductions as payments on transferred accounts payable were made. Rather, it argues that it has been the policy of the Internal Revenue Service to challenge deductions unless closing agreements are entered into in which the transferee agrees to report collections

recognized upon the exchange itself to the extent that transferred liabilities exceed the adjusted basis of transferred assets.[17]

This is without merit. In many cases, the withholding of accounts receivable would substantially impair corporate operations by making it difficult to meet working capital requirements. *See* Tritt and Spencer, supra, at 95; *cf.* Bittker, supra, at 7. Additionally, the policy of Section 351 reflects a realistic awareness that the incorporating entity is itself likely to perceive the transaction as a formal change which has little impact upon continuity of operation: the more natural inference is to simply assume the transfer of payables and receivables. However, a more basic problem is that plaintiff's predecessor did precisely that which is now asserted to be irrational. Assuming arguendo that there exist circumstances in which it makes sense to withhold income items from a controlled corporation, this hardly mandates reversing the tax consequences which naturally arise when they are in fact transferred. The partnership could have retained its receivables; having chosen to transfer them, Hempt Bros., Inc. may properly be required to accept the consequences of the exchange. Pittsfield Coal & Oil Company, Incorporated, 1966, 25 CCH Tax Ct. Mem. 11.

The court does not suggest that the Commissioner is powerless to make adjustments when necessary to prevent income distortion or tax avoidance. Indeed, the assignment-of-income doctrine might itself apply to transactions motivated primarily by tax advantage. Arent, supra, at 1002. However, the role of the doctrine seems relatively modest in this context, primarily because other means are available to reach the same result,[18] e. g., the business-purpose doctrine [19] and the Commissioner's discretionary power to allocate items of income and expense among related taxpayers. Int.Rev.Code of 1954, Section 482, *as construed in* Estate of Walling v. Commissioner, 3 Cir. 1967, 373 F.2d 190; Rooney v. United States, 9 Cir. 1962, 305 F.2d 681; National Securities Corporation v. Commissioner, 3 Cir., 137 F.2d 600, cert. denied, 1943, 320 U.S. 794, 64 S.Ct. 262, 88 L.Ed. 479.

Plaintiff's remaining arguments require only brief discussion. The decision of the Tax Court in *E. Morris Cox* [20] is relied upon for the proposition that amounts collected on transferred receivables cannot be attributed to the corporation because to do so would be inconsistent with its accrual method of accounting, pursuant to which income is realized when earned rather than when collected. To the contrary, *Cox* involved an accrual-method transferor who realized income as billings were made; the court held that the corporation was not taxable upon items

---

made on accounts receivable as income, and that this policy represents a fatal inconsistency with respect to defendant's argument that there exists a continuity of interest and operation between parties to a Section 351 exchange.

The court disagrees. It is true that the non-deductibility of transferred payables would deter the incorporation of a going business. However, the purpose of the closing agreement is merely to facilitate a proper matching of revenue and expense to preclude duplication or omission of items of income and deduction. Burke, supra, at 797; Hennessey, Accounting for a Transfer of Assets: Taxable vs. Nontaxable Acquisitions, 1972, 30 N.Y.U. Inst. on Fed.Tax. 1677, 1680–81; *see* Benjamin, Problems in Transition From Sole Proprietorship or Partnership to

Corporation, 1968, 26 N.Y.U.Inst. on Fed. Tax. 791, 805–06; Worthy, supra, at 90–91.

17. Int.Rev.Code of 1954, Section 357(c), *as construed in* Peter Raich, 1966, 46 T.C. 604. *Contra*, Bongiovanni v. Commissioner, 470 F.2d 921 (2 Cir., filed Dec. 11, 1972). In this case, both parties agree that the exchange qualified for non-recognition, and no issue has been raised regarding Section 357(c).

18. Lyon and Eustice, supra, at 424–26. *See generally* Rubin v. Commissioner, 2 Cir.1970, 429 F.2d 650.

19. See note 10, supra.

20. 1965, 43 T.C. 448.

billed by its predecessor prior to the transfer. This is merely an application of the principle that the amount of gain realized by a Section 351 transferee is to be assessed with reference to the basis of its transferor. Since plaintiff's carryover basis in the receivables was zero, it realized income to the full extent collections were made. *See, e. g.,* P. A. Birren & Son, Inc. v. Commissioner, 7 Cir. 1940, 116 F.2d 718.

Furthermore, the parties agree that the Commissioner properly required the corporation to change its method of accounting in order to clearly reflect income. Int.Rev.Code of 1954, Section 446(b). Permissible alternatives include a hybrid method which contains cash and accrual elements. Int. Rev.Code of 1954, Section 446(c)(4); H.Rep. No. 1337, 83rd Cong., 2d Sess. A158 (1954); S.Rep. No. 1622, 83rd Cong., 2d Sess. 300 (1954). The only requirements are that the method be used consistently and that it properly match items of income and expense. *See* Treas.Reg. Sections 1.446–1(c)(1)(iv)(a) (1957) and 1.446–1(c)(2)(ii) (1957). In effect, Hempt Bros., Inc. has been placed on the accrual method with respect to income earned subsequent to March 1, 1957, and on the cash method for items transferred from the partnership. The Commissioner's decision will be set aside only when it constitutes an abuse of discretion,[21] and there is no abuse when a Section 351 transferee is required to accrue post-transfer items of income and expense while reporting as income amounts collected on accounts receivable acquired from its cash-method predeces-

sor. *See* Ezo Products Company, 1961, 37 T.C. 385; *cf.* Pittsfield Coal & Oil Company, Incorporated, 1966, 25 CCH Tax Ct.Mem. 11.

Finally, it is asserted that the receivables are taxable to the individual partners because the stock which each received upon the exchange was allocated in proportion to respective interests in the partnership capital account rather than with reference to shares in transferred income items. Specifically, each partner was taxable upon twenty-five percent of partnership income, whereas individual interests in the partnership capital account and in plaintiff's stock were apportioned differently. The only authority cited in support of this position is Turnbull, Inc. v. Commissioner,[22] in which it was held that the transfer of accounts receivable among related corporations for inadequate consideration in order to utilize the transferee's large net operating loss carryovers was a transparent tax-avoidance scheme which required attribution of income to the nominal seller. Even assuming that adequacy of consideration were to be evaluated relative to proportional shares in partnership income, the facts before the court do not resemble those in *Turnbull,* and plaintiff's argument is rejected.

The corporation's second major contention is that it is entitled to an opening inventory of not less than $351,266.05 for its first taxable year because the value of the stock issued in exchange for partnership property reflected the cost of transferred inventory, constituting to its predecessor the recovery of a previously-expensed item the basis of which must be restored to cost.[23]

---

21. *See, e. g.,* Commissioner v. Joseph E. Seagram & Sons, Inc., 2 Cir. 1968, 394 F.2d 738, 743.

22. 5 Cir., 373 F.2d 91, cert. denied, 1967, 389 U.S. 842, 88 S.Ct. 72, 19 L.Ed.2d 105.

23. *Cf.* Nash v. United States, 1970, 398 U.S. 1, 90 S.Ct. 1550, 26 L.Ed.2d 1.
 An alternative argument originally propounded was based upon the theory that a change of accounting method initiated

by the Commissioner requires that opening and closing inventory for the year of change be valued consistently. Int. Rev. Code of 1954, Section 481, *as construed in* Fruehauf Trailer Company, 1964, 42 T.C. 83. However, in its reply brief, plaintiff indicates that the only issue with respect to inventory valuation is the applicability of the tax-benefit rule. The corporation's change of position rests upon express acquiescence in the principle that Section 481 adjustments are not made

However, since this ground for recovery was not presented in the corporation's claim for refund, the court lacks jurisdiction to entertain it.

■ Filing of a timely refund claim is a prerequisite to the maintenance of an action to recover taxes alleged to have been improperly assessed or collected. Int.Rev.Code of 1954, Section 7422(a). It must set forth in detail each ground upon which a credit or refund is claimed and Ƴacts sufficient to apprise the Commissioner of the exact basis thereof. Treas.Reg. Section 301.-6402–2(b)(1) (1954). A corollary of the enumerated principles is that a court lacks jurisdiction of an action to recover taxes except upon grounds reasonably encompassed by the claim for refund as originally filed or properly amended;[24] the purpose of this rule is to facilitate administrative determination of claims and to limit litigation to issues which the Commissioner has considered and is prepared to defend. Austin v. United States, 10 Cir. 1972, 461 F.2d 733; Herrington v. United States, 10 Cir. 1969, 416 F.2d 1029; Thompson v. United States, 5 Cir. 1964, 332 F.2d 657; Carmack v. Scofield, 5 Cir. 1953, 201 F.2d 360; Tompkins v. United States, Ct.Cl. 1972, 461 F.2d 1304; Union Pacific Railroad Company v. United States, Ct.Cl.1968, 389 F.2d 437, 182 Ct.Cl. 103.

Plaintiff does not argue that its tax-benefit theory of recovery was presented to the Commissioner.[25] Instead, this is

---

to the initial opening inventory of a Section 351 transferee because it has no "preceding taxable year" within the meaning of that section. See, e. g., Dearborn Gage Company, 1967, 48 T.C. 190, 196–201. Therefore, the court does not reach this issue.

24. See Real Estate-Land Title & Trust Co. v. United States, 1940, 309 U.S. 13, 60 S.Ct. 371, 84 L.Ed. 542; Austin v. United States, 10 Cir. 1972, 461 F.2d 733; Sid W. Richardson Foundation v. United States, 5 Cir.1970, 430 F.2d 710, cert. denied, 1971, 401 U.S. 1009, 91 S.Ct. 1251, 28 L.Ed.2d 544; Herrington v. United States, 10 Cir. 1969, 416 F.2d 1029; Thompson v. United States, 5 Cir.1964, 332 F.2d 657; Goelet v. United States, 2 Cir.1959, 266 F.2d 881; Fidelity-Philadelphia Trust Company v. United States, 3 Cir. 1955, 222 F.2d 379; Scovill Manufacturing Company v. Fitzpatrick, 2 Cir.1954, 215 F.2d 567; Carmack v. Scofield, 5 Cir. 1953, 201 F.2d 360; Nemours Corp. v. United States, 3 Cir.1951, 188 F.2d 745; Pelham Hall Co. v. Carney, 1 Cir. 1940, 111 F.2d 944; Paul v. United States, S.D.Ill.1971, 334 F.Supp. 1138; First National Bank & Trust Company of Chickasha v. United States, W.D.Okla.1971, 329 F.Supp. 1147; Egan v. United States, D.Del.1971, 325 F.Supp. 1227, 1229 n.3; Lehigh Inc. v. United States, E.D.Pa.1968, 290 F. Supp. 584; Miniature Vehicle Leasing Corp. v. United States, D.N.J.1967, 266 F.Supp. 697; Schuylkill Haven Trust Company v. United States, E.D.Pa.1966, 252 F.Supp. 557; Tompkins v. United States, Ct.Cl.1972, 461 F.2d 1304; Union

Pacific Railroad Company v. United States, Ct.Cl.1968, 389 F.2d 437, 182 Ct.Cl. 103.

25. On June 24, 1965, plaintiff filed a claim for refund which, in pertinent part, is as follows:
 "The taxable income of Hempt Bros., Inc. (the taxpayer-claimant herein) for its fiscal year ended February 28, 1958 has been accordingly overstated as follows:
 (a) By reason of Internal Revenue Service's failure to eliminate March 1, 1957 inventories of stone, sand and gravel from taxable income $351,266.05. . . ."
 The corporation amended its claim on July 9, 1965:
 "Reference is made to claim for refund filed June 24, 1965 with respect to the above period. This 'Amendment to Claim' is filed in further explanation and amplification of one of the issues set forth in said claim.
 "In respect of '(a)' on page 3 of the rider attached to taxpayer's claim for refund (failure to eliminate March 1, 1957 inventories of stone, sand and gravel from taxable income) filed on June 24, 1965, the Internal Revenue Service was in error because, for purposes of accounting, it was inconsistent in its treatment of taxpayer's inventory for said period.
 "The Internal Revenue Service changed taxpayer's method of accounting from a cash basis method to an accrual basis for the period March 1, 1957 to February 28, 1958 and for all taxable years subsequent thereto. The Internal

asserted to be irrelevant since the Commissioner is alleged to have been apprised of all the operative facts upon which the new theory depends and since, in any event, the refund claim is not intended to be a legal brief in which the taxpayer is required to elaborate all theories upon which the claim is based.

 To the contrary, the Commissioner is required to examine only those points to which his attention is necessarily directed,[26] and this is especially apposite here because the corporation's amended claim sets forth specific reasons in support of its inventory argument the natural effect of which is to induce the Commissioner to pursue quite a different line of inquiry than is relevant to the theory upon which plaintiff presently seeks to rely. Tompkins v. United States, Ct.Cl. 1972, 461 F.2d 1304, 1314–15 (Dissenting Opinion). Similarly, it is immaterial that facts which might support recovery pursuant to the tax-benefit theory were before the Commissioner when he reviewed the corporation's claim: the mere availability of information is not equivalent to notice that a specific claim based thereon is being made because the Internal Revenue Service cannot be expected to discover every claim which a taxpayer might conceivably assert. Herrington v. United States, 10 Cir. 1969, 416 F.2d 1029; Nemours Corp. v. United States, 3 Cir. 1951, 188 F.2d 745; Pelham Hall Co. v. Carney, 1 Cir. 1940, 111 F.2d 944;

Commercial Solvents Corporation v. United States, Ct.Cl., 427 F.2d 749, 192 Ct.Cl. 339, cert. denied, 1970, 400 U.S. 943, 91 S.Ct. 242, 27 L.Ed.2d 247; Union Pacific Railroad Company v. United States, Ct.Cl.1968, 389 F.2d 437, 182 Ct.Cl. 103.

For the reasons given, plaintiff's motion will be denied, and summary judgment will be entered for defendant.

Revenue Service, pursuant to this change, made an 'Inventory Adjustment' for the period March 1, 1957 to February 28, 1958 whereby it set off against taxpayer's cost of sales the amount of $258,201.35, which amount constituted 'the value of stone, sand and gravel produced during and on hand at the end of the taxable year.' However, the Internal Revenue Service erroneously failed to include taxpayer's beginning inventory of $351,266.05 in its cost of sales. Because the Internal Revenue Service included the taxpayer's ending inventory in income, it should have eliminated beginning inventory from income in order to put taxpayer on a consistent accounting method for such

period (March 1, 1957 to February 28, 1958). It was in error in failing to put taxpayer on the same method of accounting with respect to both beginning and ending inventory."

In substance, this is the alternative argument which the corporation originally made and then abandoned in this action. See note 23, supra.

26. Stoller v. United States, 5 Cir. 1971, 444 F.2d 1391; Sid W. Richardson Foundation v. United States, 5 Cir. 1970, 430 F.2d 710, cert. denied, 1971, 401 U.S. 1009, 91 S.Ct. 1251, 28 L.Ed.2d 544; Schuylkill Haven Trust Company v. United States, E.D.Pa.1966, 252 F.Supp. 557; see Nemours Corp. v. United States, 3 Cir.1951, 188 F.2d 745.